Elie KLINE

v.

C. W. DAWSON, d/b/a C. W. Dawson
Lumber Company.

No. 42789.

June 11, 1956.

Case Remanded June 29, 1956.

White & May, Baton Rouge, for plaintiff-appellant.

Durrett & Hardin, Baton Rouge, for defendants-respondents.

McCALEB, Justice.

This is a suit for workmen's compensation arising out of an accident occurring on April 19, 1954, in which plaintiff suffered serious personal injuries in the performance of his duties as a caterpillar tractor operator for his brother, Joseph Kline, who was engaged in the logging business. It is undisputed that his employment was hazardous and that his brother, as his immediate employer, would be liable to him for compensation. However, this action, as will hereafter be explained, is directed against, among others, Central Surety & Insurance Corporation, the workmen's compensation carrier of the C. W. Dawson Lumber Company, a commercial partnership operating a sawmill in New Roads, Louisiana. The theory of plaintiff's cause of action is that the lumber company hired his brother to haul certain logs which it had purchased from Victor Negocia (or Nicosia) to its sawmill at New Roads, and that, therefore, his brother was either an employee of the lumber company (with authority to hire plaintiff to assist him) or an independent contractor, the lumber company being liable for workmen's compensation under R.S. 23:1061 in the latter instance.

The main defense of the insurance company and the other defendants on the merits is that the C. W. Dawson Lumber Company is not liable because no relationship of either employer and employee or of hirer and independent contractor existed between it and plaintiff's brother, Joseph Kline, and that it merely purchased the logs from Joseph Kline, to be delivered by him at its mill in New Roads.

After hearing the evidence, the judge sustained the position of the defendants and

dismissed the suit.[1] On appeal, the Court of Appeal for the First Circuit, by a two-to-one decision, reached the same conclusion as the district judge but amended the judgment appealed from by dismissing the suit on its merits rather than on an exception of no right of action. See Kline v. Dawson, La.App., 84 So.2d 76. We granted certiorari and the case has been submitted for decision.

Upon the date of its submission, counsel for defendants moved to dismiss the writ of review on the ground that no brief had been filed in this Court on behalf of plaintiff. This motion is without substance for the reason, among others, that plaintiff filed a brief in support of his cause shortly after the case was submitted for decision. Nevertheless, counsel for defendants insist, in a supplemental brief, that the case is governed by Rule X and not by Section 3 of Rule XIII of the Rules of this Court, largely because plaintiff has been designated by his counsel in the brief filed on his behalf as "appellant", and that, therefore, plaintiff's brief was submitted too late to meet the necessary requirements.

■ This contention is groundless. The case is before this court on a writ of review and not on appeal. Section 3 of Rule XIII of the Rules of this Court is therefore applicable. It provides:

"When a writ of certiorari or review, or alternative writ of mandamus or prohibition, etc., or rule nisi, has been granted, the case shall be assigned for submission on the return day fixed by the court, without oral argument, and on such printed briefs as the parties see fit to file."

■ Thus, although it was highly desirable and in conformity with good practice that plaintiff file a brief in support of his cause, he was not obliged to do so. White v. Sharp, 220 La. 928, 57 So.2d 898, cited by counsel for defendants, is not apposite. That case was before this court on appeal and had been assigned for oral argument. Hence, the procedure for its disposition was that provided by Section 6 of Rule X of the Rules of Court.

Before we consider plaintiff's claim on its merits, we find it necessary to dispose of certain exceptions filed by some of the defendants in limine which are reurged in this court by their counsel. In plaintiff's original petition, judgment was sought only against C. W. Dawson, doing business as

---

1. He actually maintained an exception of no right of action which he evidently considered as a demurrer to the evidence. This was procedurally incorrect (see Bartholomew v. Impastato, La.App., 12 So.2d 700; Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 and Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257. However, the Court of Appeal, in its opinion in 84 So.2d 76, recognized the procedural defect and corrected it by amending the judgment so as to dismiss plaintiff's suit on the merits.

C. W. Dawson Lumber Company. C. W. Dawson filed an exception of no cause or right of action to this petition, alleging that he was not doing business as C. W. Dawson Lumber Company and that C. W. Dawson Lumber Company was a legal entity, entirely separate and apart from him. Before this exception was tried, plaintiff filed a supplemental petition in which he named as defendants C. W. Dawson, Robert C. Dawson, Jr., J. Wilbur Dawson and Vallery W. Dawson, "business partners doing business under the partnership name of C. W. Dawson Lumber Company", and also Central Surety & Insurance Corporation, alleged to be the compensation insurer of the aforementioned defendants, either individually or in combination. C. W. Dawson and Robert C. Dawson, Jr., excepted to this supplemental petition, asserting that neither was a partner in the partnership known as C. W. Dawson Lumber Company. And, joined by J. Wilbur Dawson and Vallery W. Dawson, they further excepted on the ground that, since plaintiff had not sued and cited the partnership known as C. W. Dawson Lumber Company, no right or cause of action had been stated against the individual partners of the concern. Meanwhile, all named defendants filed answers to the petition reserving their rights under the pleadings.

When the case was called for trial, the exceptions were argued orally. No action was required on C. W. Dawson's exceptions to the original petition in view of plaintiff's allegation in his supplemental petition that C. W. Dawson Lumber Company was a partnership. However, as to the exceptions filed by the four Dawsons, the trial judge ruled that, as C. W. Dawson Lumber Company had been named in the original petition, although not sued or cited as a partnership, its individual members could properly be made parties to the suit. The exceptions filed by C. W. Dawson and Robert C. Dawson, Jr., predicated on the proposition that they were not members of the partnership, were referred to the merits but, after the case had been partially heard, plaintiff voluntarily dismissed the suit as against them.

After the case had been concluded on the merits and the suit dismissed, plaintiff took a devolutive appeal against C. W. Dawson Lumber Company, Robert C. Dawson, J. Wilbur Dawson, Vallery W. Dawson and Central Surety & Insurance Corporation. The latter answered the appeal, asking that the judgment be amended by rejecting plaintiff's demand on the merits. J. Wilbur Dawson and Vallery W. Dawson also answered, contending that the judgment should be amended by sustaining the exception of no cause of action previously filed by them or, alternatively, by the rejection of plaintiff's demand on the merits. In view of its conclusion that plaintiff had no case on the merits against C. W. Dawson Lumber Company, the Court of Appeal found it unnecessary to consider the multiple pleadings and

the exceptions filed thereto. Following the adverse judgment of the Court of Appeal, plaintiff applied for a rehearing, which was refused by the court, and then he made timely application to this Court for the writ, which was granted.

Counsel for defendants are initially contending that, since plaintiff in his application for a rehearing prayed for a judgment against "C. W. Dawson Lumber Company, as principal contractor, for total and permanent disability", he cannot recover against any of the defendants in the suit as C. W. Dawson Lumber Company was never a party to the proceeding. Actually, the position of defense counsel is that, since plaintiff prayed as above stated in his application for a rehearing, he has not applied for a rehearing at all and therefore the writ of review should be recalled as it is a prerequisite to the obtention of a writ from this Court, under Section 11 of Article 7 of the Constitution, that application for a rehearing be made to and refused by the Court of Appeal.

 We find no merit in this proposition. The application for a rehearing was sufficient in law. The portion of plaintiff's prayer in which he asks for judgment against C. W. Dawson Lumber Company, which had not been made a party to the suit, may be treated as surplusage. It was only essential that plaintiff comply with Article 912 of the Code of Practice which provides ·that such application shall state substantially

the reasons for which the applicant believes the judgment erroneous and shall contain a citation of authorities in support of his opinion. This he has done.

Counsel for defendants next submit that the only defendant properly before this Court is the Central Surety & Insurance Corporation and that the exceptions filed in the district court as to all other defendants should have been sustained.

 This point is well taken. The commercial partnership, C. W. Dawson Lumber Company, composed of Robert C. Dawson, Sr., J. Wilbur Dawson and Vallery W. Dawson, was neither sued nor cited as such by plaintiff nor did it ever make a voluntary appearance. And, since the partnership is not a party defendant, the suit cannot be maintained against its individual members even though they may have been sued and cited. Elfer v. Mintz, La.App., 7 So.2d 416; Moore v. Easom, La.App., 46 So.2d 162; Harrison v. Frye, La.App., 46 So.2d 382; Snyder v. Davison, 172 La. 274, 134 So. 89 and Trappey v. Lumbermen's Mutual Casualty Co., 229 La. 632, 86 So.2d 515.

Accordingly, we find that the only defendant in this suit is the Central Surety & Insurance Corporation, admittedly the compensation carrier of C. W. Dawson Lumber Company, and we therefore pass on to a consideration of the merits of the case.

The primary question for determination is the precise nature of the relationship

existing between plaintiff's brother, Joseph Kline, and Dawson Lumber Company at the time of the accident. If it was that of vendor and vendee of the logs, as found by the trial court and the Court of Appeal, then clearly defendant is not liable to plaintiff for workmen's compensation benefits. If, however, an employer-employee relationship existed or even that of principal-independent contractor, then plaintiff undoubtedly is entitled to recover compensation either under R.S. 23:1035 or R.S. 23:1061.

The circumstances leading up to the accident were as follows: Jack Kline, brother of Joseph Kline and also engaged in the logging business,[2] received word that a man named Victor Negocia (or Nicosia) had some timber to sell. He contacted Negocia and was informed that he, Negocia, was willing to sell certain timber, cut into logs, at a base price of $17 per thousand feet (for stumpage and cutting). Jack Kline then conveyed this information to Robert C. Dawson, Sr., General Manager (and partner) of the C. W. Dawson Lumber Company. According to Dawson's testimony, he told Jack Kline that he would be interested in buying the logs delivered to the mill at a base price of $30 per thousand feet. Jack Kline then got in touch with Negocia and an arrangement was consummated whereby Negocia would receive a base price of $17 per thousand feet for the logs. Subsequently, Negocia went to the Dawson Company's mill in New Roads where the terms of the contract were confirmed by Robert C. Dawson, Jr., the foreman of the mill.

Next arose the question as to who would haul the logs. It is the testimony of Jack Kline (unsubstantiated by Negocia) that he was asked by Negocia if he, Kline, could haul them, to which he replied that he could not but that his brother, Joseph Kline, might be interested in doing the hauling. He further testified that he subsequently told his brother, Joseph, that "Mr. Negocia had a piece of timber that he could haul if he would go see him", for which he would receive $12 per thousand for the cypress and $13 per thousand for the hardwood.

There is nothing in the record to indicate that Joseph Kline ever had any negotiations with Negocia concerning either hauling or buying this timber. It is Joseph's own testimony that he made the arrangements to haul the timber with Robert C. Dawson, Jr., the foreman of the New Roads mill, and this was not contradicted by the latter.[3] And Joseph Kline's testimony that he was hired by Dawson Lumber Company is further confirmed by the vital fact that he was paid

2. Jack Kline was frequently hired to haul logs for the Dawson Lumber Company.

3. Dawson did deny that he went to Joseph Kline to get him to haul the logs but he doesn't deny that Joseph came to see him to make such arrangements.

for his services by the lumber company and not by Negocia.[4]

Of course, defendant strenuously insists that Dawson Lumber Company was interested only in the purchase of the logs delivered to its mill and some of the witnesses testifying in its behalf support this position. However, we think the evidence in behalf of plaintiff, that Joseph Kline was employed merely to haul logs, clearly preponderates and is fully substantiated by the circumstances surrounding the entire transaction. One circumstance we find particularly strong is that the Dawson Lumber Company, in making payment to Joseph Kline, deducted from his pay check compensation insurance premiums presumably allocable to his employees. Indeed, Robert C. Dawson, Sr., the general manager of the Lumber Company, admitted on the stand that it was the custom of the company to deduct compensation insurance premiums from the pay due those persons hauling timber for the lumber company. Later on in his testimony, he said that this was a mistake in the case of Joseph Kline but the fact remains that an amount attributable to compensation premiums was deducted from Joseph Kline's pay check and it was not until after the accident that the lumber company attempted to refund it.[5]

While it is well established that the mere issuance of a workmen's compensation policy and the acceptance of a premium therefor does not estop the insurer from later denying liability under the policy,[6] we think the Court of Appeal erred in applying that principle to the case at bar. This is not

4. It is customary in the lumber business, when purchases are made from the middleman-vendor, for the vendee to hold out from the middleman-vendor the amount due for stumpage and pay it directly to the original timber owner to protect the vendee from the possibility of having to pay twice for the stumpage. See authorities listed by Professor Malone in footnote No. 26 in support of the observations contained in Section 123 of his treatise "Louisiana Workmen's Compensation Law and Practice" and our decision in Taylor v. Employers Mut. Liability Ins. Co., 220 La. 995, 58 So.2d 206. But this practice was not employed in the instant case for, notwithstanding defendant's contention to the contrary, we do not find that any amounts due for stumpage were "held out" from Joseph Kline—he was merely paid an agreed price for hauling logs.

5. Plaintiff was injured on April 19, 1954. On April 22, 1954, Joseph Kline received a check from the Dawson Lumber Company in connection with the Negocia timber. From this check, $17.64 was deducted for insurance. On July 26, 1954, the Dawson Lumber Company credited Joseph Kline with $20 on a check given Kline in connection with another timber deal, explaining that the original deduction had been a mistake and that it was being refunded. On October 14th, 1954, Kline sent the $20 (via money order) back to the lumber company with the explanation that "I had no right to receive this money after the man was hurt."

6. Benjamin v. Standard Accident Insurance Co. of Detroit, 152 La. 874, 94 So. 428; Franz v. Sun Indemnity Company of New York, La.App., 7 So.2d 636 and Fields v. General Casualty Company of America, 216 La. 940, 45 So.2d 85.

a case of an employer protecting itself from liability for workmen's compensation by taking out insurance, as the lumber company's operations were undoubtedly fully covered by the policy of insurance prior to the time of the transaction herein involved. Rather, this case is one in which the lumber company required Joseph Kline, because of its legal relationship to him and his employees, to reimburse it for the insurance it had purchased for its own protection. While this fact does not estop the insurance company from contending that Dawson Lumber Company is not liable for compensation, it is a significant factor to be given consideration in determining the genuineness of the lumber company's position that the relation of vendor and vendee existed rather than that of hirer and independent contractor. Surely, if Dawson Lumber Company had believed its relation to Joseph Kline to be simply that of a buyer of his logs delivered to its sawmill, there was no reason whatever for it to deduct from the payments made to him the insurance premiums for the protection of his employees under its workmen's compensation policy. We think it more in keeping with reality to conclude that the relationship between Dawson Lumber Company and Joseph Kline was that of principal and independent contractor.

Accordingly, defendant insurer is liable for workmen's compensation under R.S. 23:1061, provided plaintiff has suffered a disability as a result of the accident.

While defendant denies in its answer plaintiff's claim of injury and resulting incapacity, this point was not argued in its brief to the Court of Appeal, and the only mention made of it in the brief submitted here is a statement that "Whether or not plaintiff was disabled as he claimed was also challenged." This issue, of course, was never adjudicated by the trial court or the Court of Appeal.[7]

It appears from the record that plaintiff was hospitalized for some eight days after his injury, being treated by Dr. Robert N. Helm, who testified that plaintiff suffered a possible fracture of the transverse process (which is in the region of the third cervical vertebra) and also an aggravation of a spondylolisthesis (a forward displacement of a lumbar vertebra). Two weeks after his discharge from the hospital plaintiff still had a lot of tenderness in his back and a stiff neck, and he was advised by his physician to wear a low back brace. As of the date of trial he was still wearing the brace and had not performed any work since his accident.

Dr. Helm further testified that plaintiff was not able to perform the type of work he was doing at the time he was hurt but that

7. Because the lower courts have not passed on the issue, we would normally remand the case to the Court of Appeal. However, since the evidence of plaintiff's disability was not seriously questioned by the defendant insurer, it would be inutile to remand the case.

he would·be considerably helped by a spinal fusion.

■ From this testimony, which is not contradicted, we are convinced that plaintiff has suffered total and permanent disability within the meaning of the Workmen's Compensation Law.

■ Plaintiff has also demanded penalties for the insurer's refusal to pay compensation. This claim is not recoverable as we do not regard the refusal to pay to be arbitrary and capricious.

■ Plaintiff has claimed recovery for medical expenses incurred by him, but the record contains no evidence as to the amount of these expenses. In these circumstances, his demand will be dismissed as of nonsuit, with reservation of his right to claim all medical expenses incurred by him up to the limit allowed by law in future proceedings.

For the foregoing reasons, the judgments of the District Court and Court of Appeal are reversed and it is now ordered that there be judgment herein in favor of plaintiff, Elie Kline, and against defendant, Central Surety & Insurance Corporation, for compensation at the rate of $30 per week, commencing April 19, 1954, for the duration of his disability, not exceeding 400 weeks, with interest at the rate of 5% per annum on each past due installment from its due date, until paid.

It is further ordered that all accrued amounts with interest from the due date of each installment at the said rate, until paid, be in a lump sum, and that the fee of the attorneys for plaintiff be fixed and apportioned at a sum equal to 20% of the amount collected under this judgment, provided that the maximum attorney's fee shall not exceed the sum of $1000, said fee to be paid out of the award made to plaintiff.

It is further ordered that plaintiff's claim for medical expenses be dismissed as in case of nonsuit. All costs are to be paid by defendant.

Application for rehearing not considered. See order remanding the case upon joint motion.

### Order

FOURNET, Chief Justice.

The foregoing joint motion of counsel for Elie Kline and Central Surety & Insurance Corporation, and the affidavit annexed thereto considered, the Court noting that all parties remaining in this action, through their undersigned counsel, have signed said joint motion, and the premises considered:

It is ordered that this case be, and it is now hereby remanded to the 18th Judicial District Court within and for the Parish of Pointe Coupee, Louisiana, for the purpose of permitting the said Elie Kline and the said Central Surety & Insurance Corporation to effect and consummate a compromise

settlement of all claims involved in this litigation and all controversies between said parties, by presenting to the Judge of the 18th Judicial District Court within and for the Parish of Pointe Coupee, Louisiana, a petition for a compromise settlement of all said claims and controversies, and, upon approval thereof by the said Judge of the 18th Judicial District Court within and for the Parish of Pointe Coupee, Louisiana, by having payment made thereunder by said Central Surety & Insurance Corporation to Elie Kline of the amount agreed upon, and full and final release and discharge given by said Elie Kline to said Central Surety & Insurance Corporation.