102 So.2d 237

**Mrs. Bonnie STEVENS**

v.

**J. E. MITCHELL et al.**

No. 43414.

Nov. 12, 1957.

On Rehearing April 21, 1958.

A. D. Flowers; Parker & Parker, Jena, for relators.

Provosty, Sadler & Scott, Alexandria, Martin S. Sanders, Jr., Olla, for respondents.

MOISE, Justice.

While assisting in loading logs on a truck owned by J. E. Mitchell, O. D. Stevens suffered injuries on June 16, 1955, from which he died the following day, June 17, 1955.

Stevens' widow, Mrs. Bonnie Stevens, filed the present workmen's compensation proceeding against J. E. Mitchell, Elmo Tullos, d/b/a Tullos Lumber Company, and Consolidated Underwriters, for compensa-

tion in the amount of 32½% of $40 for three hundred weeks ($3,900), plus medical, surgical, hospital, funeral, and transportation expenses.

The trial judge assessed liability for compensation against J. E. Mitchell only, on the theory that there was a vendor and vendee relationship between J. E. Mitchell and Elmo Tullos, d/b/a Tullos Lumber Company.[1] The Court of Appeal, Second Circuit, affirmed the judgment. On application for a Writ of Review, this Court unanimously granted same. Article VII, sec. 11, Louisiana Constitution of 1921, LSA.

It is admitted by all defendants that the deceased was injured during the course of his employment and that compensation is due his widow. The controversial issue is—which of the defendants is liable?

In the instant case, on an examination of the record we conclude that circumstantial variety coupled with substantial unity is the strongest kind of evidence.

■ The record discloses that T. O. Griffin discussed with Elmo Tullos the sale of his timber to Tullos at some future date, and that when he was ready to dispose of his timber to Tullos he negotiated with J. E. Mitchell, a logger, to cut and deliver the logs to Tullos at his mill. With Tullos'

1. Williams v. George, La.App., 15 So.2d 823; Grant v. Consolidated Underwriters, La.App., 33 So.2d 575; Smith v. Crossett Lumber Co., La.App., 72 So.2d 895; Wysinger v. Godfrey, La.App., 86 So.2d 597.

consent, Mitchell discussed a price for the timber with Griffin, the price agreed upon being $28 per thousand to Griffin. Mitchell was to receive $22 per thousand for his labor. The majority of payments were made in cash, and Mitchell actually conveyed the money to Griffin. Mr. Griffin testified that he sold his timber to Tullos, and that he dealt with Mitchell because Mitchell knew all about his timber. He said that he looked to Tullos for payment. The deceased met his death while working on this project as an employee of and under the supervision of Mitchell.

In his reasons for judgment, the trial judge stated:

"It is the contention of Elmo Tullos, d/b/a Tullos Lumber Company, and his insurer, Consolidated Underwriters, that the deceased, A. D. Stevens, was in the exclusive employ of J. E. Mitchell; that J. E. Mitchell purchased from Griffin the timber on his tract, and sold to Tullos delivered at Tullos's mill, the logs at so much per thousand, and that the relationship between Mitchell and Tullos was that of vendor and vendee. That as such Elmo Tullos would not be liable and that Consolidated Underwriters, the insurer, would thus not be liable.

"It is the contention of J. E. Mitchell that he was merely hauling the logs for Mr. Tullos. That Mr. Tullos had purchased the timber from Mr. Griffin. That Mr. Tullos was paid for insurance at regular intervals to cover his operations and that aside from and regardless of the relationship existing between them, that Mr. Tullos was obligated to furnish said insurance, and should be held liable."

Mitchell's testimony is to the effect that the immediate transaction was one of sale between Griffin and Tullos, and that he acted only as an intermediary. The record clearly discloses that the logging operations were not those of a sale between Mitchell and Tullos; that it was a sale between Griffin and Tullos. Mitchell could not sell these logs nor deliver them to any other mill. He could only cut the logs on the Griffin tract and deliver them to Tullos' mill. All arrangements had to meet with the approval of both Tullos and Griffin. This is further substantiated by the fact that when Stevens was killed, Tullos cancelled future delivery of timber from the Griffin tract. Under these circumstances, there could not be the relationship of vendor and vendee between Tullos and Mitchell.

Mitchell was an independent contractor, and, as such, he endeavored to protect his employees. He stated that he paid Tullos certain amounts to cover workmen's com-

pensation liability. It was his understanding that Tullos was to subscribe for coverage under a policy which he, Tullos, carried.

The Workmen's Compensation Law speaks with authority. In LSA-R.S. 23:-1061, it provides:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

Having established that at best Mitchell was an independent contractor, it follows that Tullos was the principal contractor and as such was primarily liable to Mrs. Bonnie Stevens, widow of O. D. Stevens. Kline v. Dawson, 230 La. 901, 89 So.2d 385.

■ The next question presented is whether Tullos' insurer, Consolidated Underwriters, is responsible for the liability. Tullos' coverage reads as follows:

"Coverage B—Employers' Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, * * * by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declaration or in operations necessary or incidental."

Item 4 classified Tullos' operations as follows:

" * * * Logging or Lumbering— N. O. C.—including transportation of logs to mill; construction, *operations, maintenance or extension of logging roads or logging railroads*; Drivers, Chauffeurs and their Helpers—(Mill operations to be separately rated)"

The insurance contract constituted the law between Tullos and Consolidated Underwriters. Moll v. Mutual Health Ben. & Acc. Ass'n, 223 La. 511, 66 So.2d 320. A reading of the entire three year policy (which expired on January 1, 1958) as a whole convinces us that it was the intention of the insurance company to cover Tullos' logging operations, as well as all of his employees.

" * * * No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer; provided * * *". LSA–R.S. 23:1162.

Clause 8 of the Policy reads:

"All of the provisions of the workmen's compensation law shall be and remain a part of this policy as fully and completely as if written herein, * * *"

The method of payment of insurance premiums by Tullos to Consolidated Underwriters was not one of preciseness or exactness. It was one of settlement for premiums over a period of time. He mailed to the insurance company the total amount of his monthly payroll—*not the names* of his employees nor their individual wages. Tullos stated that the insurance company did not know whose wages were included. That was not the fault of Stevens nor of Mitchell. Tullos was later billed according to payroll figures. The insurance company was satisfied that there was compliance with the Conditions of the policy, Clause 2, which reads:

"If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve months period, or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, * * *"

Tullos accepted insurance premium money to cover Mitchell's employees when Mitchell was performing logging operations for Tullos on an adjoining tract (Whatley Tract), which money was submitted to the insurance company. The insurance premium money, for coverage of his employees while engaged in logging operations on the Griffin Tract, was paid by Mitchell to Tullos before Stevens' death, but this money was not submitted to the insurance company until after Stevens' death. The insurance company refused to

cover Mitchell's logging operations, after Stevens' death, and ordered Tullos to return to Mitchell the money paid. This was at a suspicious time, because Stevens had already been killed.

We do not believe that the time of payment of premiums was of importance under this policy, so long as such payment was within a twelve month period. Clause 2, Conditions, supra. The logging coverage provisions, supra, and the large general liability were undoubtedly written into the policy to cover just such a situation as is herein involved.

Therefore, it is equitable, and in contemplation of this humanitarian Workmen's Compensation Law, that, as the principal contractor, Elmo Tullos, d/b/a Tullos Lumber Company, is liable to the widow of O. D. Stevens; and, because of the insurance policy in force at the time of O. D. Stevens' death, Consolidated Underwriters should pay the liability. This seems to be a matter of simple justice and a measure of protection to a workman who leaves dependents behind him "when he has gone to that great beyond from which no traveler ever returns."

Plaintiff prayed for $35 transportation and lodging expenses to and from the hospital, and we agree with the trial judge that these items were not sufficiently proved. The other items demanded by plaintiff were proved, and they are limited to the amounts set forth in her petition.

For the reasons assigned, the judgments of the District Court and the Court of Appeal, Second Circuit, are reversed and set aside. It is now ordered that there be judgment herein in favor of plaintiff, Mrs. Bonnie Stevens, and against Elmo Tullos, d/b/a Tullos Lumber Company, and Consolidated Underwriters, in solido, to pay to plaintiff 32½ per cent of $40 per week for a period of three hundred weeks dating from June 16, 1955, together with medical, surgical, and hospital expenses of $780 and funeral expenses and burial plot of $265. It is further ordered that the medical, surgical, and hospital expenses, funeral expenses and burial plot, together with all past due installments on the compensation payments, plus interest at 5% thereon, be paid in cash, and that the remaining unpaid compensation weekly payments bear interest at the rate of 5% from the due date of each installment. It is further ordered that the fee of the attorney for plaintiff be fixed at 20% of the net amount collected by plaintiff under this judgment.

## On Rehearing

HAMITER, Justice.

On the original hearing of this cause plaintiff was awarded a workmen's

compensation judgment against the defend-ants Elmo Tullos and Consolidated Under-writers (insurer of Tullos), pursuant to' the principal and contractor provisions of. LRS 23:1061, for the death of her husband which occurred during the course and scope of his employment with defendant J. E. Mitchell. But there we failed to specifi-cally rule on the alternative demands of Tullos and Consolidated Underwriters that they, in the event of being condemned to pay the compensation to plaintiff, have judgment against the contractor J. E. Mit-chell for the same amount for which they are cast. And because of the oversight we granted this rehearing, it being restricted to a consideration of the mentioned alterna-tive demands. In all other respects our original judgment is final.

Unquestionably, the alternative demand of Tullos is well grounded in law, for the second paragraph of LRS 23:1061 pro-vides: "Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensa-tion to the employee or his dependent, and shall have a cause of action therefor." However, in view of the circumstances dis-closed by the evidence adduced, which was clearly admissible under the pleadings of Mitchell, we are of the opinion that such alternative demand cannot be sustained.

According to the testimony of Mitchell he was assured by Tullos that his employees would be covered by compensation insur-ance (to be obtained by Tullos) and he thought all the while that he had such coverage. In this connection he stated that his practice was to give to Tullos "a little list of the men and the time they had each week"; that occasionally he paid an insur-ance premium to Tullos, this occurring after the latter had informed him of the amount then due; and that it was not un-til after the death of plaintiff's husband (Mitchell's employee) on June 16, 1955 that his money was returned by Tullos and he was told that no insurance had been ob-tained for him.

Tullos admitted his having informed Mit-chell that he would try to obtain the com-pensation insurance and having collected from Mitchell from time to time insurance premiums based on the lists of employees furnished. However, he testified that he made no effort to obtain the coverage and that he failed to send to the insurance com-pany any of the premiums paid to him by Mitchell. As to this failure Tullos did not say that the insurance was unobtainable; he merely said: "I had overlooked it (pre-mium money) in my bookkeeping, my book-keeper had, and failed to send it in." In-

cidentally, Tullos admitted that in a former transaction with Mitchell, involving a different tract of timber, he had collected similar premiums and sent them to the insurance company, they having been computed on lists of employees furnished by Mitchell.

Tullos admitted that he did not inform Mitchell of his failure to obtain the insurance until after the death of plaintiff's husband and that he then returned the premiums to Mitchell on the advice of his insurer. Further evidencing this return is a letter from Tullos to Mitchell, dated September 1, 1955 (approximately two and one-half months after the employee's death), wherein the writer stated that he was enclosing a check "as refund on money paid to me for insurance." This check, which was never cashed by Mitchell, was likewise introduced into evidence.

Clearly the above described acts of Tullos, particularly the promise to try to obtain the insurance and the assessing and collecting of premiums from time to time, warranted the thought and an assumption on the part of Mitchell that his logging operations were covered by suitable insurance and that he was fully protected from compensation claims. Further, there is no doubt that such protection could and would have been provided had Tullos used Mitchell's premium payments for the purpose intended. And it follows that Tullos should not now be permitted to recover judgment against Mitchell on a claim that exists solely because of his neglect.

A factual situation somewhat similar to the one here was involved in Carpenter v. Madden, 90 So.2d 508, 514, a case decided by the Court of Appeal of the Second Circuit and in which we denied certiorari. There the defendant Godfrey had failed to fulfill his promise to obtain compensation insurance for the defendant partnership of Madden and Dewitt, the immediate employer of the injured employee, notwithstanding that he collected the necessary premiums from the employer. In ruling that Godfrey must hold the employer harmless from the compensation claim the court correctly observed: " * * * That Godfrey did not obtain the insurance that he represented he obtained is evident from the policy introduced in evidence insuring him and him alone. Relying upon these representations and agreement that Godfrey either had or would obtain insurance insuring defendants Madden and Dewitt, they have been prejudiced by his failure in that respect. They were led to believe they were secure so far as any compensation claims might arise. It was not until after the accident occurred for which they became liable for workmen's compensation they were informed that the insurance did not cover them. While it is recognized that estoppels

are not favored in law, in clear cases estoppels should be applied. The situation here presents a clear case where the plea should be sustained."

Neither can the defendant Consolidated Underwriters recover herein from Mitchell. Its claim against the latter is only that of a subrogee of the insured, Tullos, inasmuch as there was no contractual relationship between the two and the compensation statute does not grant to it an independent right against such employer. And as such subrogee it stands in the shoes of Tullos—all defenses that can be urged against its insured are likewise available against it. See Aetna Casualty & Surety Company v. Cazebon, La.App., 11 So.2d 118; Taylor v. Willett, La.App., 14 So.2d 298; 83 C.J.S. verbo Subrogation §§ 14, 52 and 57; and 50 American Jurisprudence, verbo Subrogation, Section 110. Therefore,· since the above outlined circumstances bar recovery by Tullos, Consolidated Underwriters similarly is not entitled to a judgment against Mitchell.

For the reasons assigned it is ordered, adjudged and decreed that the alternative demands of defendants Elmo Tullos, d/b/a Tullos Lumber Company, and Consolidated Underwriters, as against the defendant J. E. Mitchell, be and they are hereby denied. All costs of this proceeding are to be paid by the first named two defendants.