122 So.2d 889 (1960)
Rose Leona Hoyt HANO
v.
Edward KINCHEN et al.
No. 5073.
Court of Appeal of Louisiana, First Circuit.
June 29, 1960.
Rehearing Denied September 23, 1960.
*890 L. B. Ponder, Jr., Amite, Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellant.
Dodd, Hirsch & Barker, Baton Rouge, for appellees.
Mentz & Ford, Hammond, for defendant Kinchen.
Before ELLIS, LOTTINGER and LANDRY.
LANDRY, Judge ad hoc.
This is a suit for workmen's compensation benefits in which plaintiff Rose Leona Hoyt Hano, on behalf of herself and minor children, seeks judgment against defendants for compensation at the rate of $30. per week, for 300 weeks for the death of her late husband, Noah Hano, who was killed April 25, 1956, during the course of his employment by defendant Edward Kinchen as a timber cutter.
Following the death of her said husband, plaintiff instituted suit against defendant Edward Kinchen (the admitted employer of decedent). By third party petition Kinchen impleaded as defendants Herbert F. Freiler, (hereinafter referred to simply as Freiler), Freiler Industries, Inc., a corporation hereinafter referred to simply as Freiler Industries, and Consolidated Underwriters, compensation insurer of Freiler Industries (hereinafter referred to simply as Consolidated). On the day set for trial in the lower court, by stipulation of record entered into by and between counsel for plaintiff, counsel for Kinchen and counsel for Consolidated and filed of record in the presence of counsel for Freiler and Freiler Industries, judgment of dismissal with prejudice was entered as to Freiler individually and Consolidated. No objection to this dismissal was made by counsel for Freiler Industries. The cause then proceeded to trial as against defendant Kinchen and Freiler Industries resulting in judgment in favor of plaintiff as prayed for against defendant Kinchen and in favor of Kinchen against Freiler Industries for all amounts due by Kinchen to plaintiff.
Upon rendition of the aforesaid judgment Freiler Industries requested and was granted a rehearing, following which said defendant filed a third party petition making Consolidated a third party defendant in these proceedings. Consolidated then filed an exception of res adjudicata predicated upon the aforementioned judgment of dismissal and, in addition filed exceptions of no right and no cause of action. The learned trial judge overruled all exceptions filed on behalf of Consolidated and after trial adversely with said defendant entered judgment in favor of plaintiff against Kinchen in the sum of $30. per week for 300 weeks commencing April 25, 1956, with interest at the rate of 5% per annum on each past due installment from due date, until paid. Judgment was also rendered in favor of Kinchen against Freiler Industries for the amount awarded plaintiff and in favor of Freiler Industries against Consolidated in a similar sum. From this judgment Freiler Industries and Consolidated appeal. No appeal was taken by defendant Kinchen who concedes the correctness of the judgment against him.
It is undisputed that Hano was killed during the course and within the scope of his employment by Kinchen. It is also admitted by all parties that the occupation of timber cutter is hazardous and covered by our compensation laws.
*891 Conceding decedent Hano was the employee of defendant Kinchen and that a buyer-seller relationship existed between Kinchen and Freiler Industries, learned counsel for plaintiff readily acknowledges plaintiff's claim herein against Freiler Industries and Consolidated is predicated solely upon equitable estoppel. The plea of estoppel rests upon the contention that Freiler, as agent of Freiler Industries, accepted from Kinchen certain payments for which he agreed to secure workmen's compensation insurance on Kinchen's employees and failed to do so. With respect to Consolidated, the plea is founded on the allegations that the moneys received by Freiler from Kinchen were forwarded to Consolidated and retained by said corporation thereby rendering Consolidated liable although it is admitted Consolidated never issued a policy in the name of Kinchen. In this connection considerable reliance is placed by counsel for plaintiff on the jurisprudence established in Carpenter v. Madden, La.App., 90 So.2d 508, and Stevens v. Mitchell, 234 La. 977, 102 So.2d 237, wherein under circumstances somewhat similar to those herein involved, pleas of estoppel were sustained. In the cited cases defendants were held liable in solido with an employer cast for compensation benefits because the employer had paid defendants for compensation insurance which defendants had failed to secure.
In the case presently before us the evidence indicates without dispute that Kinchen is self-employed as a buyer and seller of logs and timber. He owned his own equipment, retained absolute control over his employees, received no advances from any purchaser to whom he sold, and, bought and sold timber whenever and wherever he could using his own crews and facilities to cut and haul same.
Among other enterprises, Freiler Industries operates a sawmill which it supplies by purchasing logs from numerous sellers thereof and by some production obtained from properties owned or controlled by it. In or about March, 1956, the corporation had in effect a policy of workmen's compensation insurance issued by defendant Consolidated through its agent, T. H. Maston and Company, which policy covered all employees of Freiler Industries including those involved in timber operations which were to any extent controlled by said corporation. Included in this policy was the name of one Oscar Williams (listed therein as an employee of Freiler Industries (whether he was in fact an employee of Freiler Industries being an issue in dispute between Freiler Industries and Consolidated). With matters thus existing Kinchen approached Freiler and discussed with him the future sale of logs to Freiler Industries. Although Kinchen and Freiler agreed on many aspects of their alleged conference, they differ widely as to what was said, understood or agreed concerning the obtaining of insurance on Kinchen's employees.
Kinchen's version of the events which transpired is that in late February or early March, 1956, he went to see Freiler, who is president of Freiler Industries and through Freiler arranged to sell logs to the corporation. On that occasion he spoke with Freiler about insurance on his employees. On the first Saturday he collected for logs delivered to the company, he asked Freiler if Freiler could withhold an amount for insurance and Freiler assured him he could. After discussing the matter, Freiler informed him that since Kinchen was selling to other mills, Freiler could not make the deductions upon the value or volume of timber sold but upon Kinchen's payroll and it was agreed that Freiler would withhold between $14. and $15. for each $100. of payroll developed by Kinchen weekly. Thereafter Freiler deducted the agreed sum each week and in those weeks in which Kinchen sold no logs to Freiler Industries Kinchen paid, by personal check, the amount due for insurance based upon his payroll resulting from his dealing with other buyers. Kinchen stated unequivocally Freiler agreed to see that he obtained insurance and throughout the entire transaction he felt his employees *892 were covered. He denied being obligated to obtain insurance because of his dealings with Reimers-Schneider (another concern to whom he sold logs) as contended by Freiler.
According to both Kinchen and Freiler, in the weeks which followed Freiler did, in fact, deduct and withhold the agreed percentage of Kinchen's weekly payroll. It is also undisputed that during weeks in which Kinchen sold no logs to Freiler Industries, Kinchen remitted the stated amount predicated upon payroll incurred in cutting, hauling and selling logs to purchasers other than Freiler Industries. The parties also agree that pursuant to the aforesaid arrangement deductions from amounts due Kinchen were made weekly as follows: March 17, 1956, $33.75; March 24, 1956, $56.85; March 31, 1956, $47.25 and April 7, 1956, $48.60. During the weeks April 14 and 21, 1956, Kinchen sold no logs to Freiler Industries but it appears that on April 28, 1956, (after the death of decedent Hano) Freiler Industries deposited to its account two checks given by Kinchen, one dated April 14, 1956, in the sum of $44.25 and the second dated April 21, 1956, in the amount of $63.30 both of which were dishonored because of insufficient funds in Kinchen's account. Kinchen acknowledges these two checks have never been paid. Upon deducting the amounts withheld from Kinchen's account, or upon receipt of his checks, Freiler remitted company checks to T. H. Maston and Company including the amounts involved in the two previously mentioned checks which Kinchen has never honored.
In substance, defendant Kinchen maintains he knew Freiler Industries had compensation coverage on its employees and by paying the insurance rate on his own employees to Freiler Industries the corporation would cover his employees under its policy. His testimony is clearly to the effect he thought he was being insured under the policy covering the employees of Freiler Industries and that Freiler had agreed to this arrangement.
The testimony of Freiler regarding the withholding of moneys from Kinchen's account coincides substantially with that of Kinchen. As is to be expected, however, his evidence regarding what was said about the securing of insurance differs greatly from that of Kinchen on this most important point. In his testimony given during the initial trial (after Consolidated's dismissal herein) Freiler repeatedly and steadfastly denied that he intended to insure Kinchen's employees under the compensation policy then in force with respect to Freiler Industries. He consistently stated he never discussed with any agent or representative of T. H. Maston and Company (the admitted agent of Consolidated) the question of insuring Kinchen's employees under the policy protecting Freiler Industries. His testimony was positively to the effect he withheld the moneys paid by Kinchen purely as an accommodation to Kinchen believing that Kinchen had insurance of his own. His evidence at that time further indicated he believed Kinchen had an agreement with another concern (Reimers-Schneider), to whom Kinchen sold logs, pursuant to which Kinchen had agreed to take out such insurance as a condition precedent to doing business with said concern. He explained it was in this belief that he accepted checks from Kinchen during those weeks in which Kinchen sold no logs to Freiler Industries and particularly so with reference to the two dishonored checks dated April 14 and April 21, 1956, respectively. He further testified he was not positive Kinchen had such an agreement with Reimers-Schneider but believed that, if he did not, the premiums remitted to Maston would be applied toward the purchase of a policy in Kinchen's name. He stated he never told Kinchen whether Kinchen had or did not have insurance but admitted he sent in a report of Hano's death at Kinchen's request following the accident. His testimony was clearly to the effect he merely remitted the amounts to T. H. Maston and Company and at no time disclosed in any manner to any official or agent thereof the fact that remittances *893 made by Freiler Industries were intended to cover employees of Kinchen.
With more than passing interest we detect a distinct change in the tenor of Freiler's testimony given on the rehearing when defendant Consolidated was made third party defendant upon the petition of Freiler Industries. On this occasion Freiler's testimony is the height of inconsistency when compared to that formerly given. He then stated he did, in fact, accept the payments made by Kinchen with the intention of remitting them to Maston for the purpose of affording Kinchen's employees the protection provided by the policy issued in the name of Freiler Industries. He also then recalled having discussed with Henry Nabors, a salesman representing Consolidated, the matter of covering one Oscar Williams (a logger who did some work for Freiler Industries) under the Freiler Industries policy. He also intimated that at this same time he mentioned (but not "pointedly") to Nabors the matter of covering Kinchen's employees and gave the impression he felt Nabors understood payments were being sent in to cover Kinchen's employees. His consistency was limited to testimony to the effect Kinchen was definitely not an employee of Freiler Industries.
Roy Severance, compensation underwriter for T. H. Maston and Company, called on behalf of defendant Consolidated, testified his company wrote the compensation policy issued Freiler Industries as agents and representatives of Consolidated. He stated that, when originally written, the policy covered no employee of Freiler Industries engaged in logging operations because at that time said corporation purchased all of its logs and had no need for such coverage. Subsequently, when an audit revealed that Oscar Williams was cutting logs on lands owned or controlled by Freiler Industries, representatives of his company suggested that Williams' operation be covered because of the possibility Freiler Industries might become responsible for compensation payments due Williams' employees. Maston and Consolidated were fully cognizant of this arrangement with respect to Williams and assented thereto but that, at no time, did either Kinchen or Freiler request or in any manner indicate to Consolidated that coverage on Kinchen's employees was necessary or desired. He further stated that if such request had been made relative to Kinchen, it would have been rejected because the policy in question was intended by its terms to extend coverage to employees of Freiler Industries only. He explained that premiums due for compensation insurance are paid periodically and at the end of each policy period, the payroll records of the insured are audited to determine the total premiums due. He explained that insurance rates are computed on a percentage of payroll incurred in each worker classification, the rates differing according to the type and nature of work performed. His testimony also shows that premium rates for employees in the logger classification are among the highest of all rates charged. According to Severance when the books of the assured are audited if the assured has overpaid premiums due he is refunded the excess paid whereas, if his remittances are insufficient to cover the total shown to be due he is charged with the balance owed. In addition, Severance testified that when the books of Freiler Industries were audited following the death of Hano, it developed that said insured owed a balance of approximately $1,600. which was disputed by Freiler Industries and ultimately compromised by Consolidated accepting the sum of $1,000. from Freiler Industries in full payment thereof.
Henry Nabors, salesman for Maston, testified he sold the initial compensation policy to Freiler Industries which policy commenced June 1, 1954 and expired one year thereafter. The policy was subsequently renewed on its expiration date and was in force and effect on April 25, 1956, the date of Hano's death. The initial policy was not written to cover employees engaged in logging operations because at its commencement date Freiler Industries purchased *894 all of its logs and engaged in no timber operations of its own. On conducting the first audit (subsequent to June 1, 1955), it came to the attention of Consolidated's auditors that one Oscar Williams was conducting timber operations on lands owned or controlled by Freiler Industries. The auditors recommended and suggested to Freiler that Freiler Industries cover the operations of Williams because the relationship between Williams and the corporation was such that the corporation might be liable in compensation benefits to Williams' employees. Following this discussion, the policy was endorsed to cover logging operations of Freiler Industries and said company began the periodical remittance of amounts to Consolidated to cover the timber operations of Williams. Nabors readily admitted that Consolidated was fully aware of this arrangement and intended to cover and did cover Williams' employees, even to the extent of paying benefits to at least one such employee. Nabors further stated, however, that at no time did either Kinchen or Freiler request coverage on Kinchen's employees. He also testified Kinchen's employees could not have been covered under the Freiler Industries policy and that no documents or remittances received from Freiler Industries ever indicated premiums were being paid on employees of Kinchen. Finally, he testified until notice of Hano's death was received neither Maston nor Consolidated had any knowledge of the agreement and arrangement between Kinchen and Freiler.
Counsel for plaintiff acknowledges that no policy of insurance was ever written by Consolidated in the name of Kinchen, nor was the policy of Freiler Industries ever specifically endorsed to cover Kinchen's operations. He further concedes Freiler Industries is not an insurance company nor is any aspect of its business concerned with the writing of insurance in any form. Moreover, as previously stated, illustrious counsel contends solely that under the doctrine of estoppel enunciated in the Carpenter case, supra, and reaffirmed by our Supreme Court in the Stevens case, supra, both Freiler Industries and Consolidated are liable in solido, with Kinchen, to plaintiff for workmen compensation benefits admittedly due by Kinchen for the death of plaintiff's husband.
In the Carpenter case, supra, a purchaser of wood was held liable to an employee of the vendor for compensation benefits because the buyer accepted funds from the purchaser for the express purpose of securing insurance for the seller. The facts in the Carpenter case, supra, are that the sellers, DeWitt and Madden, paid the purchaser, Godfrey, the sum of 50¢ per cord on wood sold the latter by the former. Godfrey received the sums thus paid as payment of premiums on Workmen's Compensation insurance which Godfrey represented he would obtain for the sellers. The purchaser did not obtain the desired protection despite his representations he had done or would do so. Upon the occurrence of an injury to an employee of the sellers, it was disclosed that Godfrey had secured insurance solely in his own name. Recognizing that estoppels are not favored in law, the court held in the Carpenter case the doctrine of estoppel is, nevertheless, applicable when the party against whom it is sought to be invoked does an act or pursues a course with full knowledge of the facts and, the party asserting the estoppel has relied thereon to his prejudice. Finding that all of the essential elements of estoppel were present, the court invoked the estoppel doctrine and held the purchaser Godfrey liable to the sellers DeWitt and Madden to the extent said sellers were liable to their employee.
The ruling in the Carpenter case was followed with approval by the Supreme Court of this state in Stevens v. Mitchell, 234 La. 977, 102 So.2d 237, which case likewise involved a claim for workmen's compensation benefits claimed by a widow for the death of her husband. In the Stevens case, suit was instituted against defendants Mitchell, Tullos and Consolidated Underwriters. The facts disclosed in the opinion *895 show that one Griffon discussed with defendant Tullos the future sale of timber by the former to the latter. When Griffon desired to dispose of his timber he negotiated with Mitchell to cut and deliver the logs to the purchaser Tullos. With the consent of Tullos, Mitchell discussed with Griffon the price to be paid for the timber, the price agreed upon being $28 per thousand, Mitchell to receive $22 per thousand for cutting and hauling. Decedent was killed while working as an employee of Mitchell. In rendering judgment in favor of plaintiff in solido against Mitchell, Tullos and Consolidated Underwriters (compensation insurer of Tullos), the Supreme Court held that Tullos was not entitled to recover from Mitchell because the evidence showed Tullos accepted payments from Mitchell for compensation insurance on Mitchell's employees which Tullos had promised to obtain but failed to procure. Judgment against Consolidated Underwriters was predicated upon the principle the legal relationship between Tullos and Mitchell was not that of buyer and seller but that of principal and independent contractor under which Tullos, as principal contractor, was liable to plaintiff under the authority of Kline v. C. W. Dawson Lumber Co., 230 La. 901, 89 So.2d 385.
With regard to defendant Freiler Industries the plea of estoppel advanced by plaintiff appears well taken under the jurisprudence evolved in the Madden and Stevens cases, supra. On the second trial of this cause, granted upon application for rehearing made by defendant Freiler Industries, Consolidated was made third party defendant herein upon petition of Freiler Industries. During the second trial Herbert F. Freiler, President of Freiler Industries, was most insistent in his testimony that he accepted the payments from Kinchen upon the representation he would use the funds thus derived in the purchase of insurance upon Kinchen's employees. He also indicated most clearly (contrary to his testimony given upon the first hearing) that he intended Kinchen's employees to be covered by the policy then in force with respect to the employees of Freiler Industries. In his zeal to impose liability upon Consolidated, he readily admitted every fact necessary to justify application of the estoppel doctrine announced in the Madden and Stevens cases. He now finds himself hoist on his own petards and must accept the consequences of such admissions given under oath. It is agreed by all concerned that Freiler's actions were all conducted in his representative capacity as President of Freiler Industries which corporation is bound by the action of its officer and agent acting for and on behalf of said corporation. No citation of authority is required to support the principle that the acts of an agent performed during the course and within the scope of his employment are legally binding upon his principal.
Pretermitting all consideration of the various exceptions filed on behalf of defendant Consolidated, we will dispose of the question of its alleged liability herein upon the merits. In this connection, we find we must disagree with learned counsel for plaintiff and Freiler Industries who so astutely contend the aforementioned pleas of estoppel may justifiably be applied herein with respect to said defendant. We deem it unnecessary to recite in detail all of the evidence concerning the knowledge of Maston and Consolidated regarding the agreement between Kinchen and Freiler. It suffices to say, under the circumstances herein shown, we are unimpressed with the contradictory testimony of Freiler on this important issue. We find as a fact that neither Maston nor Consolidated nor any employee of either concern had knowledge or was aware of the discussions between Kinchen and Freiler concerning the insurance desired by Kinchen. There is not one scintilla of credible evidence in the record substantiating the contention that Maston, Consolidated or any representative of said concerns intended to insure Kinchen under the policy issued in the name of Freiler Industries. Nor do we find in the record any persuasive corroboration of the allegation *896 that the employees of Maston and Consolidated knew or should have known a portion of the premiums being remitted by Freiler Industries were in fact being paid to cover insurance on the employees of Kinchen. On the contrary, the evidence reflects Consolidated was totally unaware and uninformed with regard to the dealings between Kinchen and Freiler. Under said circumstances, the plea of estoppel is without foundation with respect to said defendant.
The policy in question plainly states the name of the insured to be Freiler Industries, Inc. (and another corporate entity whose identity herein is immaterial.) At no place in the policy is Kinchen named or designated as an insured. The insuring agreement contained in the policy reads in part as follows:
"I Coverage AWorkmen's Compensation
"To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
"Coverage BEmployers' Liability
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declaration or in operations necessary or incidental thereto."
Under the foregoing policy provision, Consolidated agreed to pay not only all workmen's compensation due employees of Freiler Industries but all compensation claims which said corporation might be legally obligated to pay under the compensation laws of this state. In this connection, learned counsel, relying principally upon the Stevens case, argue that liability imposed on Freiler Industries, on the estoppel theory advanced herein, is liability under our compensation laws for which Consolidated is also responsible under the hereinabove quoted policy provision.
It now appears to be well settled that liability for workmen's compensation benefits is predicated upon the legal relationship between the parties. In interpreting the appropriate provisions of our compensation law, the courts of this state have held that for liability to attach in such cases the legal relation of employer and employee must exist between the parties. LSA-R.S. 23:1031, Kennedy v. Johnson Lumber Co., La.App., 33 So.2d 558, Menard v. Brown & Cassidy Warehouse, La.App., 72 So.2d 891. It is equally well settled that on the authority of LSA-R.S. 23:1061 a principal contractor is liable for compensation benefits due the employee of a subcontractor or independent contractor for injuries sustained in the course of performing work the sub-contractor or independent contractor is obligated to execute for the principal. Kline v. C. W. Dawson Lumber Co., 230 La. 901, 89 So.2d 385; Williams v. Consumers Ice Co., La.App., 68 So.2d 246; Wynn v. Fidelity & Cas. Co. of N. Y., La.App., 85 So.2d 315; Wysinger v. Godfrey, La.App., 86 So.2d 597.
Commencing with Langley v. McDonald, 7 La.App. 715, it has been repeatedly and consistently held that the employee of a seller may not look to the purchaser of his employer's products for compensation benefits. The decision in the Langley case, supra, has been followed, reaffirmed and reiterated in numerous subsequent instances included among which we find the following: Harris v. Southern Kraft Corporation, 183 So. 65; Weldon v. Pickering Lumber Corporation, La.App., 186 So. 371; Wilson v. Roberts, La.App., 194 So. 88; Brown v. City of Shreveport, La.App., 15 So.2d *897 234; Smith v. Crossett Lbr. Co., La.App., 72 So.2d 895.
The Stevens case, supra, so confidently relied upon by esteemed counsel is readily distinguishable from the case at bar. It is clear that in the Stevens case the Supreme Court found and held as a fact Mitchell was an independent contractor which rendered the principal Tullos responsible to Mitchell's employee under the authority of Dawson v. Kline, supra, and other cases hereinabove cited. In the case at bar counsel for plaintiff, as well as counsel for Freiler Industries, acknowledge and admit the relationship existing between Kinchen and Freiler Industries was that of buyer and seller. These same counsel also frankly grant that decedent was in the employ of Kinchen and not Freiler Industries.
The liability herein visited upon Freiler Industries on the doctrine of estoppel held applicable to the instant case, is not liability for benefits due under our workmen's compensation law because under said law said defendant being a purchaser is immune from compensation claims of the employees of its seller Kinchen. The liability of Freiler Industries resulting from the estoppel invoked herein is totally unrelated to any provision of our workmen's compensation law and entirely foreign thereto and independent thereof. It is in the nature of an obligation predicated upon breach of a quasi-contract wherein Freiler agreed and obligated himself to perform a certain act and failed to discharge the burden assumed to the detriment of the obligee Kinchen. The foundation for such liability is not encompassed within the framework of our compensation laws. Its basis may be said to consist solely of equitable considerations. It follows, therefore, the learned trial court fell into error in holding defendant Consolidated responsible for compensation benefits due plaintiff herein.
For the reasons herein assigned, judgment is rendered herein amending the judgment of the trial court by reversing that portion of the decree holding defendant Consolidated Underwriters liable for the compensation benefits due plaintiff. In all other respects the judgment is affirmed at the cost of appellant Freiler Industries, Inc.
Amended and affirmed.