CULPEPPER, Judge
(dissenting).
In my view, plaintiff proved a prima facie case that he was a statutory employee, LSA-R.S. 23:1061, of Acadian Pulpwood Corporation. And defendant failed to prove its affirmative defense that Acadian was a purchaser of pulpwood. In particular, Acadian failed to prove who owned this pulpwood or who sold it to Acadian.
Acadian Pulpwood Corporation owns and operates a pulpwood yard. All of the corporate stock is owned by Mr. Robert Guil-lory. Mr. Raymond Heinen is general manager, Joseph Doucet is the bookkeeper, and Tayo Guillory is an employee in charge of unloading pulpwood at the yard.
The plaintiff, Anthony Bellard, was a laborer working for a one-truck producer named Adam Semien. Semien is uneducated and inarticulate but his testimony shows clearly that he was an independent contractor under an agreement with Acadi-an. He did not own this timber and did not even know who did. All he knew was what he was told by Mr. Heinen, Acadian’s *810 general manager. Heinen told him where to cut the wood, to haul it to Acadian’s yard and he would be paid by the cord. Semien did exactly this. On direct examination, Semien testified:
“Q. Now, Mr. Simien, what kind of work do you do?
A. Cut pulpwood.
Q. For who ?
A. In that time I was cutting for Mr. Robert Guillory and them.
Q. Now, when you .say ‘Mr. Robert Guillory and them,’ who do you mean?
A. Well, you see, like I want to cut on a tract of timber, I go over there to the yard and I ask Mr. Raymond where I can cut wood; so he say, well, Simien, he say, you can go on this tract or this tract, he tell us where to go to cut.
Q. Now, when you say ‘Mr. Raymond,’ that’s Mr. Raymond Heinen?
A. Yes, sir.
Q. Now, why would you ask him where to go cut?
A. Cause we didn’t have no wood, you see, we got to go through them, they buy the wood and we go and cut it, you see, they tell us—
Q. They would get the permission to go on a piece of property to cut the wood?
A. Yes, sir. You see, they’d buy the wood — I don’t know how they buy it, but anyway, we got to go through them to get permission to go on that tract of timber and cut cause we didn’t have no wood.
Q. Now, how long have you been cutting wood for them?
A. Oh, I don’t know exactly, many years.
Q. Many years.
A. Since it was open, when Mr. Robert Guillory opened the wood yard I started cutting for them.
Q. Now, the ‘wood yard,’ that’s Acadian Pulpwood ?
A. Yes, sir.
Q. Now, why do you say ‘Mr. Robert Guillory,’ did he ever tell you where to go to cut or give you any instructions ?
A. No, sir, you see, that’s why I call Mr. Robert Guillory because when I wanted something I go to Mr. Robert Guillory’s. If I needed to buy me an old truck, buy a saw, I go and borrow some money with him — I believe I still owe them now —I go and borrow some money with him, then I pay them so much a week, so much a cord, you see, say, well, so much a cord and pay them for my old truck and my saw.
Q. They would hold the money out of the check that you would get for the payment on your truck and your saw?
A. Yeah, and a saw, if I had borrowed some money with them, you know.
Q. And that’s how you got your equipment to cut wood with?
A. That’s right.
Q. Now, again, you say ‘Robert Guil-lory,’ you’re talking about Acadian Pulpwood ?
A. Yeah.”
On cross-examination, Semien testified substantially the same:
“Q. Now, do you know who the wood belonged to, do you know if it belonged to Mr. Waltrip and Mr. Heinen ?
A. That wood, I believe, Mr. Richard had bought it. I’m not sure, no.
*811 Q. Richard Waltrip, that’s who you’re talking about?
A. One of them. Another company had bought it, you understand.
Q. Now, let me ask you this. Actually, didn’t you bring this wood to any of several yards, for example, didn’t you used to bring some of this wood to Mr. Ahren’s yard?
A. You see, that’s the way it go. You buy a piece of tract of timber— that’s the way I take it, I dont’ know how the rest of them take it — you buy a tract of timber, buy some wood, and you send me over there to cut. Some people does it, yeah, I wouldn’t do it. I go to you and ask you, I say, well, I’ll be glad to go to cut some wood. Well, he say, I got a tract of timber in so many place, you want to cut for me. I say, yes, sir, I’ll cut for y’all, y’all the company, you come over there and show me where I can cut that wood, you tell me haul my wood where I want. Well, I’m supposed to haul it at your yard because you bought that wood, I didn’t bought it. If it wouldn’t be for you I can’t haul no wood because I can’t buy the wood, I ain’t got no money. It wouldn’t look nice to take some wood what you had bought and bring to the next man over there.
Q. Now, Adam, let me ask you this. So the only people that would tell you where to go to cut would be either Mr. Heinen or Mr. Richard?
A. The onliest one told me to go when I wanted to cut some wood I go ask Mr. Raymond what tract of wood, tract of timber, if he had a tract of timber for us. Sometimes he’d say, yeah, I got some — Mr. Richard had some log cut over there, he got some tops, he say y’all can go over there and cut all the tops y’all want.
Q. Now, did Tayo Guillory every tell you where to go to cut?
A. Sometimes he’d tell Mr. Tayo to tell us, if somebody come up here tell them — I might not be around here, if they want to go and cut they can go and cut so many place.”
Semien testified that he hauled the wood to Acadian and was paid by the cord at the end of the week. A check was handed to him by Joseph Doucet, Acadian’s bookkeeper. Doucet testified to the same effect, that he paid Semien, usually by check. Semien then cashed his check and paid his laborers in cash.
There is no substantial contradiction to Semien’s testimony. Tayo Guillory, Aca-dian’s employee who was responsible for unloading the pulpwood at the yard, did not know who owned the timber. At one point he said he thought the timber had been purchased by Richard Waltrip, but in another part of his testimony he said that Acadian itself was cutting the timber and had given Semien permission to scrap the pulpwood, Tr. 72. Viewed in the light most favorable tb defendant, it can only be said that Tayo Guillory did not know who owned the timber. But regardless of who owned it, Tayo Guillory testified that Heinen usually told Semien where to cut wood.
Mr. Robert Guillory, the sole stockholder of Acadian, said he took no part in active management. He testified generally as to three different methods by which Acadian acquired timber: (1) Sometimes the haulers themselves owned the timber and would bring it to the yard and sell it to Acadian. (2) In other cases, the owner of the timber had authorized the producer to cut and haul the pulpwood to the yard and requested Acadian to withhold stumpage, a common procedure in the pulpwood industry. (3) In some instances Acadian owned the timber and contracted with producers to cut and haul it to their yard. Mr. Guillory did not say which situation applied in the present case. He did say he understood *812 this land was owned by Deo Fruge and that Acadian had never purchased timber from Fruge. But Guillory did not say who owned the timber.
Mr. Heinen, Acadian’s manager, must have known who owned this timber. Yet defendant did not call him as a witness. I find no explanation by defendants for their failure to introduce Heinen’s testimony. It must therefore be presumed that his testimony would have been detrimental to defendants’ case, United States Fidelity & Guaranty Company v. Dixie Parking Service, Inc., La.App., 248 So.2d 377; Fackrell v. Gulley, La.App., 246 So.2d 368, and Robinson v. Melton Truck Lines, Inc., La.App., 244 So.2d 705.
In its brief, Acadian says the timber was owned by Richard Waltrip. Here again, defendants did not call Waltrip as a witness. Apparently, defendants’ theory is that Wal-trip told Heinen to send producers out to cut and haul the wood and withhold the stumpage for Waltrip. However, this theory is completely destroyed by Acadian’s check stubs for the entire period in question, which were introduced into evidence. There were no checks payable to Richard Waltrip for stumpage or anything else. So defendants have failed to prove that they purchased this wood from Richard Waltrip.
LSA-R.S. 23:1061 (sometimes referred to as “Section Six” of the Louisiana Compensation Act), provides for the liability of the principal to employees of an independent contractor, where he “undertakes to execute any work, which is a part of his trade, business, or occupation.” Our jurisprudence is established that the cutting and hauling of timber is a part of the trade, business or occupation of a person who manufactures lumber or buys and sells timber, Collier v. Southern Casualty Insurance Company, La.App., 186 So.2d 161 (3rd Cir. 1966) and Stevens v. Mitchell, 234 La. 977, 102 So.2d 237 (1958).
Plaintiff proved a principal-contractor relationship between Acadian and Semien. The evidence is uncontradicted that Heinen, Acadian’s manager, showed Semien the timber and told him he could cut and haul it to Acadian’s yard at an agreed sum per cord for his services. Semien did exactly that.
The defense is that the relationship between Acadian and Semien was vendor-vendee and not principal-contractor. Of course, this defense has long been recognized in cases arising out of the timber industry. Hadnot v. Southern Casualty Insurance Company, La.App., 166 So.2d 15; Bryant v. United States Fidelity & Guaranty Company, La.App., 163 So.2d 95; and Collier v. Southern Casualty Insurance Company, La.App., 186 So.2d 161 (3rd Cir. 1966). But in the present case, defendant has failed in its burden of proof. It has not proved who owned the timber or who sold it to Acadian. Clearly, Acadian had the burden to prove this essential element of its defense.
For the reasons assigned, I respectfully dissent.