GLADNEY, Judge.
Mrs. Bonnie Stevens, widow of A. D. Stevens, has brought this suit under provisions of the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq., for the death of her husband, caused by injuries arising out of his employment. Made defendants are J. E. Mitchell, the the immediate employer of Stevens, Elmo Tullos, allegedly the principal contractor and remote employer, and the latter’s insurer, Consolidated Underwriters, Judgment was rendered in favor of plaintiff against Mitchell, and her demands against Tullos and his insurer were rejected. Plaintiff has appealed from the judgment insofar as it rejected her demands against Tullos and his insurer. Mitchell also has appealed. The insurer of Tullos has filed an answer to the appeal for the purpose of preserving its right of indemnity against Mitchell, should it be condemned to pay plaintiff.
A. D. Stevens was employed by J. E. Mitchell at a weekly wage of $40 when he received injuries on June 16, 1955, while employed and assisting in loading logs on a truck. As a result of the injuries so received he died on the following day. It is conceded that plaintiff is entitled to recovery of workmen’s compensation under the provisions of the statute subject to determination of the parties liable under the provisions of the Workmen’s Compensation Statute.
J. E. Mitchell was an independent timber operator engaging in buying, cutting, hauling and selling of timber, or simply engaged in some of these operations and not all of them. He owned his equipment and not infrequently he sold timber to Elmo Tullos who operated a lumber company under the name of Tullos Lumber Company. It is the contention of Mitchell that on the occasion when Stevens met his death, he, Mitchell, was under contract with and hauling logs for Tullos, and that the latter had purchased the timber from T. O. Griffen. Mitchell also contends that he paid money to Tullos at intervals for insurance to cover his operations, and that in consequence thereof Tullos was obligated to furnish insurance and should be held solely liable to the plaintiff.
The record discloses that T. O. Griffen owned certain timber and before the same was cut, he discussed with Tullos the sale of the timber; that as a result of the conversation no agreement upon the terms *317 of sale was reached and Griffen informed Tullos that when he, Griffen, got ready to cut the timber he would let Tullos know. Some time later Griffen talked to Mitchell and told Mitchell that when the timber was cut he wanted it hauled to the Tullos Lumber Company. It seems that all arrangements thereafter with reference to Griffen’s timber were conducted by Mitchell who contracted for its cutting with Grover C. McLain, and agreed upon the price to be paid for the timber with T. O. Griffen, Mitchell testified Tullos offered $50 per thousand feet for the timber delivered at the mill, and as a consequence of this he informed Griffen that the latter could receive $28 per thousand feet for his timber and he, Mitchell, would receive $22 per thousand feet for the cutting and hauling. It was in response to this understanding that the timber was cut, and while the timber was being cut, Stevens, the immediate employee of Mitchell, received his fatal injuries. It developed further that after the death of Stevens, Tullos did not accept delivery of" any more logs at the mill from the subject timber and Griffen and Mitchell or either of them sold the logs to the Den-ton Lumber Company.
The judge a quo held that the relation between Mitchell and Tullos was that of vendor and vendee and cited in support of his ruling the following authorities: Williams v. George, La.App.1943, 15 So.2d 823; Grant v. Consolidated Underwriters, La.App.1947, 33 So.2d 575; Wysinger v. Godfrey, La.App.1956, 86 So.2d 597.
It is the contention of counsel for Mrs. Stevens that Tullos was a principal contractor or a remote employer as such, of her late husband. The evidence conclusively shows Tullos occupied the status of a vendee of the timber as delivered by Mitchell. No agreement between Tullos and Griffen had been reached upon the sale of the timber. In fact, the timber was purchased from Griffen by Mitchell who arranged for the cutting thereof and hauling to the mill where he was paid upon a delivered basis. Tullos had no connection with the timber other than as a buyer of the logs. We are referred to the case of Kline v. Dawson, 1956, 230 La. 901, 89 So.2d 385, as being persuasive that Tullos and his assurer should be held liable. It is observed that after rendition of its opinion therein the Supreme Court ordered the case remanded for compromise. The relevancy of Kline v. Dawson to the instant case arises from the inference drawn by its author from deductions by Dawson for insurance upon the asserted vendor-vendee relationship. The insurance deductions by Dawson were but one factor which influenced the opinion. Another factor was the uncontradicted testimony of Joseph Kline that he made arrangements with Robert C. Dawson, Jr., the foreman of the mill, to' haul the timber. Thus, if the mill did in fact contract with Kline for hauling the timber it would necessarily become a principal contractor with corresponding responsibility under the compensation statute. See: LSA-R.S. 23:1061.
There is no evidence whatsoever of an agreement whereby Tullos was to become responsible for the hauling of the logs by Mitchell. The testimony oí both parties as to the arrangement shows that Tullos agreed to pay $50 per thousand feet for the logs when delivered at his mill, and thereafter Mitchell purchased the timber from Griffen for $28 per thousand, which was paid by Mitchell out of payments as received from Tullos for the delivered logs.
The evidence concerning the payments for insurance to Tullos by Mitchell, plainly reveals that Tullos told Mitchell he would try to secure protection for Mitchell’s men under his own insurance. Tullos testified he never remitted any of the money to the insurance company for the extra coverage, and that after the death of Stevens and upon the advice of the insurance representative, he returned the money to Mitchell. Counsel for Mitchell asserts that by reason of “Tullos taking his said money for insurance and retaining it beyond the date of the loss involved without furnish *318 ing same for him as agreed * * * judgment should be rendered in your respondent’s favor against the said Elmo Tullos * *
Consistent with the proven facts -as set forth above, we must hold there is no basis for a contract of indemnity in favor of Mitchell. The efforts of Tullos to obtain the insurance for Mitchell were not fruitful. The insurance was not obtained and there is not the slightest bit of evidence that Tullos agreed to become the independent insurer of Mitchell. Whether Tullos was negligent in his efforts is a question not before us. The contention of Mitchell on this issue cannot be sustained. Counsel for Mitchell have cited a number of early Louisiana decisions to the effect that where a practice of insuring another has. been established, an agent cannot, afterwards omit doing so without informing the principal. . These authorities are inapposite. Mitchell had, established no such practice or custom in dealing with Tullos, who acted from accommodation. It is well known workmen’s compensation insurance is not easily obtainable for small logging contractors. The statement of Tullos is not in any wise contradicted by Mitchell, but merely shows that Tullos promised to try to secure insurance for Mitchell and did not do so.
The finding of this court is that: Mitchell alone is responsible for workmen’s compensation and plaintiff is clearly entitled to recover from him; the logs were bought by Tullos when delivered to his mill; he was not a party in interest in the purchasing, cutting and hauling of the logs; therefore, his status was strictly that of a vendee and not that of a principal contractor, or the remote employer of Stevens; and, further, Mitchell has failed to establish his alleged right to indemnity from Tullos due to the latter’s failure to obtain workmen’s compensation insurance on his behalf.
. Therefore, it follows from our findings hereinabove set forth, that the judgment from which appealed should be affirmed at appellant’s cost.