ELLIS, Judge.
The defendants have appealed from a judgment of the District Court in which the plaintiff was awarded compensation for total and permanent disability in the maximum amount and duration, together with the usual interest.
This suit was filed against Clemons Brothers Lumber Company, a commercial partnership, engaged in the general lumber business, and its compensation insurer, Argonaut Insurance Company, by the plaintiff who alleged that on March 24, 1959 he was employed as a laborer, cutting and hauling logs for Jack Candiotta, “who was employed by Clemons Bros. Lumber Company to cut and haul logs;” that on that date he sustained serious and permanent injuries to both legs consisting of fractures when his legs were crushed beneath “several logs which fell from a truck which was being unloaded in the Clemons Bros. Lumber Company yard in Amite, Louisiana.”
The defendants admitted in their answer that the plaintiff was injured on the date alleged on the premises of the Clemons Brothers Lumber Company, but deny that there was any relationship between Jack Candiotta, plaintiff’s employer, or plaintiff so as to render the defendants liable for any compensation to the plaintiff; in the alternative, that the plaintiff was an employee of one Jack Candiotta who was in the business of buying, cutting, and selling timber and/or logs to various mills in and about the State of Louisiana; that Jack Candiotta had no contractual relationship with the defendant, Clemons Brothers Lumber Company at the time, being a mere seller of timber for the prevailing price and was not in any manner an employee, contractor, or sub-contractor of the defendant, Clemons Brothers Lumber Company.
It is admitted that the plaintiff was an employee of Jack Candiotta and not in anywise connected with the Clemons Brothers Lumber Company on the date of his injuries. The sole question before this court is the nature of the relationship existing between Jack Candiotta and Clemons Brothers Lumber Company, which the plaintiff alleged was that of employer-employee, however, counsel for plaintiff in his brief has cited LSA-R.S. 23 :1061, which fixed liability upon any principal contractor for payment of compensation to the injured employee of a sub-contractor or independent contractor employed by the principal “for the execution by or under the contractor of the whole or any part of the work undertaken by the principal.”
Counsel for plaintiff relies upon and cites Kline v. Dawson, 230 La. 901, 89 So.2d 385; Stevens v. Mitchell, 234 La. 977, 102 So.2d 237; Jones v. Hennessy, 232 La. 786, 95 So.2d 312. Of these three cases counsel in his brief states:
*479 “In spite of the well reasoned arguments set forth above, our Courts have for many years maintained the position that the employee who sells and delivers timber to a buyer is not entitled to workmen’s compensations from the latter under [LSA-JR.S. 23:1061. This position resulted in numerous hardships among those employed in the lumber industry, since their only action would be against their immediate employer who in the vast majority of cases is insolvent. However, the Supreme Court in three recent decisions has had an opportunity to scrutinize the obvious inequity of such a result, and apparently being impressed with the fact that the lumber dealer is the only person in a position to protect this class of individuals by requiring proof of insurance or solvency on the part of the intermediary has unanimously held in all three cases in favor of the injured worker as against the lumber dealer, thereby reversing the prior trend referred to above. It is interesting to note that in all three cases it was necessary for the Supreme Court to reverse the Courts of Appeal, which understandably were following the prior jurisprudence set aside and nullified by these three decisions í¡< íjí »
In the cases cited as well as in all cases involving the question of the relationship of the injured employee’s employer to his principal, it is merely a question of fact. The status is to be determined by the facts in each case, and in the three cases cited the Courts of Appeal, upon the facts, decided that there was the relationship of seller-buyer, while the Supreme Court as it appreciated the facts decided that it wás not a relationship of seller-buyer but came under LSA-R.S. 23:1061. It was as simple as that. The insolvency of the real employer has nothing to do with the decision as to the status between the employee’s employer and a third party, and nowhere in the three cases do we find that the Supreme Court was “impressed with the fact that the lumber dealer is the only person in the position to protect this class of individuals by requiring proof of insurance or solvency on the part of the intermediary * * * ” but merely held from the facts in each case that the relationship came under LSA-R.S. 23:1061. Furthermore, the Supreme Court in all previous cases to the “three recent decisions.” had an opportunity to scrutinize the alleged “obvious inequity” if any existed.
The facts in the case at bar clearly prove that Jack Candiotta was an independent buyer, logger, and seller. He owned all his own equipment, had his own employees, bought timber from owners on the price agreed to between them only, cut it, hauled it, and sold the logs to any mill of his choice, presumably where he obtained the best price. In the present case, Candiotta was riding along Highway 51 in Tangipahoa Parish and saw that trees had to be cleared from a proposed power line. He stopped and found out that they wanted to sell the timber. He bought it from the American Creosote Company, its owner, cut it and sold the hardwood at a delivered price, which means that the stumpage was included in the price which the mill paid him, to the Freiler Lumber Company, and sold the pine in the same manner to the defendant, Clemons Brothers Lumber Company. He had sold logs in the same way to a number of other mills, not only in Tangipahoa Parish but in adjoining parishes. It is further shown that Candiotta would either collect the entire amount, the price of the logs, from the mill or as in the present instance, request that a separate check be made for whatever amount he had agreed to pay the owner for the timber and it would either be mailed to the owner or delivered by Candi-otta.
There is not one iota of evidence or single fact which indicates even that Clemons Brothers Lumber Company had anything to do with purchasing the timber in question, nor did they even know that Candiotta was going to bring them these logs until he arrived at the mill with them. He owed them nothing and was not obligated in any manner to the Clemons Brothers Lumber Company on the date that he brought the first load of *480 logs to the mill. It is true that Clemons Brothers Lumber Company, as is common practice, operates a store, mainly for the convenience of its employees, however, anyone is free to trade at that store. It is shown that it is more convenient and customary for one hauling logs to the mill or even selling logs, as Candiotta was doing, to buy gasoline from Clemons Brothers Lumber Company and to trade in the company store if they so desired. In the present case it is shown that the plaintiff herein, who was in charge of the truck and the crew that was hauling the logs and employed by Candiotta, bought lunch from the store for the crew and had it charged to Candi-otta. In other words Candiotta had an account at the store for such things and for gasoline and oil if he wanted to buy them there. It was strictly at his option and such accounts were usually deducted from the amount due by the Lumber Company. Can-diotta was not required nor requested to buy anything from Clemons Brothers Lumber Company. If he did, he was required to pay for it and he chose to have the amount deducted from the sale price of the logs. The only thing deducted from Candiotta’s check by Clemons Brothers Lumber Company was any amount which he owed them plus the stumpage price of the timber if Candiotta requested that it be done that way. The stumpage price is usually deducted and check made to the owner of the timber in order to protect the mill. There is nothing wrong with this, nor does it alter or change the relationship between the mill and the seller of the logs.
There is an additional fact which counsel for plaintiff deems most important and that is testimony to the effect that Clemons Brothers Lumber Company also had a garage for its own use and convenience but which it allowed its own employees or an independent contractor or a seller, in this instance, Candiotta, to borrow a tool from in an emergency or to fix a tire in the garage. In the instant case it is shown that the plaintiff had used the garage to re-charge a battery that had run down on the truck. It is clearly shown that this is merely a gratui-tious service in the event something went wrong while the truck was at the mill.
There is not a single fact which establishes any control by Clemons Brothers Lumber Company over Candiotta or that he was an employee of the defendant, or that he occupied a relationship of an independent contractor to the defendant. Candiotta was the sole purchaser of the timber, was the owner of his logging equipment and employed his own employees, cut what and when he pleased in accordance with his agreement with the owner of the timber, and sold it to any mill that he chose. Clemons Brothers Lumber Company did not know where these logs had come from until Candiotta informed them when he requested that the stump-age be deducted for the American Creosote Company, the original owners and the seller to Candiotta.
Clemons Brothers Lumber Company freely admitted that they owned logging equipment and employed people to operate it and that they also employed independent contractors such as Rodriguez who testified in the case; that they deducted compensation, social security and stumpage from his checks. They did not do this with Candiot-ta whom they referred to as a custom logger, which was one who bought his own timber independently and sold it where he pleased. Every time Candiotta sold timber to Clemons Brothers Lumber Company nothing was deducted other than the stumpage if requested or to pay for goods purchased.
It is unfortunate that Candiotta was insolvent and carried no compensation insurance but this is a question or matter that addressed itself to the Legislature and does not change the status or relationship existing between the third party and Candiotta. In this case the relationship between Candi-otta and Clemons Brothers Lumber Company was that of seller and buyer.
The cases relied upon by the plaintiff are not factually similar to the facts found by the Supreme Court from which it deduced *481 that there was no relationship of vendor-vendee or seller-purchaser between the parties.
For the above and foregoing reasons the judgment of the District Court is hereby-annulled, set aside and reversed and it is now ordered that the plaintiff’s suit be dismissed at his costs.
Reversed.