Plaintiff was injured while discharging the duties of a contract of hiring with D.L. George and sues to recover workmen's compensation on the basis of permanent total disability, less a small credit on that account. On the theory that George was a subcontractor of S.J. Monroe, he, also, was impleaded as defendant.
George did not answer the suit. Issue as to him was joined by default. Monroe did answer. He denies that there was any contractual relation between him and George at the time plaintiff was injured or prior. There was judgment for plaintiff against George for compensation at the rate of $9 per week for 100 weeks. His right to recover the amount of medical and physicians' bills was reserved to him. His demand against Monroe was rejected and he appealed.
The appeal tenders only two questions, to-wit:
Were the business relations and conduct between George and Monroe of such character as to create or superinduce the relation of principal and contractor, or contractor and subcontractor; and the extent and probable duration of plaintiff's disability to do manual labor, the only sort of work of which he is capable to earn a livelihood.
George was engaged in the business of buying standing timber and converting it into saw logs and pulp wood and selling the same. Plaintiff was a day laborer and was felling trees when injured. A limb from a falling tree struck the right side of his head inflicting an ugly laceration.
Practically all, if not all, of the pulp wood manufactured by George was hauled to the Brown Paper Mill in Ouachita Parish and there sold and delivered to Monroe, who, in turn, sold the same to the mill company. George hired and paid his own workmen, furnished his own trucks, bought and paid for the timber he converted into pulp wood and acted wholly and in all respects as his own master. He had no contract with Monroe to buy the pulp wood. He knew the sort of wood the mill would accept and knew the price per cord Monroe would pay. He was under no binding obligation to sell the wood to Monroe but did so because the Brown Paper Mill was closer to the situs of his operations than any other mill of the kind.
The paper mill many years ago found it expedient to depend upon a few men to supply it with pulp wood rather than upon a multitude of men who delivered such wood when they chose and in quantities by them fixed. In order to have a dependable supply of wood the mill company gave to *Page 824 
some five or six men the exclusive right to acquire and sell to it pulp wood within fixed territorial limits. Monroe was one of the men accorded this exclusive right. The mill company did not purchase pulp wood from any other persons.
It is quite clear that as between George and Monroe the relation of purchaser and seller existed. The fact that Monroe's clerical force assisted George in keeping his records in good order for social security purposes, and in some other respects rendered him assistance, does not alter their primary relationship; nor does the fact that in some instances, by agreement between the vendors of timber and George, Monroe retained and paid to said vendors the stumpage price due them by George.
This court and the First Circuit have considered and passed upon several cases wherein the facts were the same or nearly so as those in the instant case. Invariably, it has been held that the relation between the parties was that of purchaser and seller; not that of principal and contractor. See Hatch v. Industrial Lumber Company et al., La.App., 199 So. 587, and other cases therein cited; Vincent v. Industrial Lumber Company et al., La.App., 199 So. 593; Reed v. J.W. Jeffries Lumber Company et al., La.App., 9 So.2d 87.
The record is not burdened with a mass of conflicting testimony, common to cases of this character, touching the extent of plaintiff's injuries and the probable duration of his disability. He was knocked to the ground by the force of the blow but very soon recovered himself and was able to walk. He was promptly taken to Dr. French in the City of Monroe, who sutured the scalp wound and after some thirty or forty days the patient was discharged as being well. Dr. French testified that plaintiff returned to his office for treatment at least twenty times unnecessarily. However, on these visits he says plaintiff was complaining of headaches. X-ray pictures made by Dr. Smith, according to Dr. French, disclosed no fracture of the skull nor other bone injuries. He did not interpret the pictures himself but testified from Dr. Smith's report. At time of trial Dr. Smith was in the military service of the Government and his testimony could not be procured.
Dr. C.H. Moseley examined plaintiff and X-rayed his head and neck. He testified as follows: "He had a fractured skull and a fracture of the neck. His skull is fractured on the right, a lineal fracture about an inch and a quarter; the beginning and ending of the fracture is marked by some red dots. Then he has a fracture of the third cervical vertebra; and a fracture of the lamina of the third cervical vertebra. * * *"
He was of the opinion that the blow to plaintiff's head was sufficient to produce the fractures his pictures disclosed, and that the clinical conditions could well be charged with the headaches and dizziness of which plaintiff complained.
Dr. Moseley further testified: "Q. Is it your opinion, Doctor, that a man in the condition that this man is in, is able to do any hard work or labor? A. I believe the man has a brain injury, a sub dura hemitonia. I think he will have headaches and dizziness."
It will be noted that this answer is not exactly responsive to the question. The doctor did not say whether plaintiff could or could not do hard work.
It is well known that headaches and dizziness do not invariably disable a person from pursuing his chosen line of work. They, of course, are discomforting.
Plaintiff testified that head pains continued for hours at times and that he had dizzy spells; that he had not done any work since the accident and could not do so. When asked why, he said: "My head being dizzy and I am not able to stand up and do work."
This is not controverted by other testimony.
The case was tried seven months after the accident.
The record is barren of any testimony bearing upon the probable duration of plaintiff's disability. It only meagerly establishes inability on his part to resume hard work for a living. We are inclined to the view that plaintiff to some extent has exaggerated his condition. Concerning this phase of the case, the trial judge, in written reasons for the judgment, said: "There was no testimony as to the permanency of the injury or its duration, or whether or not the plaintiff could ever do useful work of the type for which he was qualified, but this Court is led to the conclusion that he will be disabled for a considerable length of time from performing his duties as a common laborer." *Page 825 
Due to the lack of definiteness of the testimony pertinent to the question of duration of plaintiff's disability, the court availed itself of the provisions of Subsection 8 of Section 8 of the Workmen's Compensation Law, as amended, Art. No. 242 of 1928, p. 362, which reads: "For injury producing temporary total or temporary partial disability the Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability."
All things considered, we are not prepared to disagree with the lower court's conclusions on the factual issues tendered. There appears no manifest error in that respect; and for the reasons herein assigned, the judgment appealed from is affirmed. Costs of appeal are assessed against plaintiff.