LANDRY, Judge.
In this action plaintiff, Zack Benton, seeks recovery of Workmen’s Compensation Benefits from his employer, Willie Brown (who is engaged in the business of purchasing, cutting, hauling and selling pulpwood), Harmon Hyde, an alleged independent contractor (who purportedly purchased pulpwood from Brown for the account of Hyde’s principal, M. A. Pope) and M. A. Pope (whose business is that of pulpwood broker), the asseverated principal of Hyde.
It is conceded plaintiff was injured during the course and within the scope of his employment by Brown who engaged plaintiff to cut, load and haul pulpwood, an un *726 dertaking acknowledged by all parties to be a hazardous occupation.
A better understanding of plaintiff’s position will be afforded by a brief outline of the salient facts and circumstances involved herein. Defendant Pope is admittedly engaged in the business of buying, cutting, hauling and selling pulpwood on a rather large scale and is what is known in the trade as a pulpwood broker or dealer. In the conduct of his operations Pope employed one James E. Curtis, Jr., a Forester, whose duties are principally those of “contact man” and consist of the obligation of securing and supervising of so-called “buyers” who purchase pulpwood for Pope’s account. In his capacity as contact man for Pope, Curtis enlisted the services of defendant, Harmon Hyde, as a “buyer” for Pope and Hyde in turn purchased pulpwood from plaintiff’s employer, Willie Brown. While working for Brown plaintiff received the injuries which gave rise to this litigation.
The trial Court rendered judgment in favor of plaintiff against defendant Willie Brown but rejected plaintiff’s claim against defendants Hyde and Pope on the ground the relationship between Brown and Hyde as well as that between Hyde and Pope was that of buyer and seller. Plaintiff has appealed the judgment dismissing his demand against Hyde and Pope contending the trial court erred (1) in holding that the contractual relationship between defendants Hyde and Pope was that of buyer and seller (2) failing to hold that Hyde was an independent contractor engaged in the performance of work of a nature ordinarily indulged in by Pope and, therefore, Pope is liable in compensation to the employees of the alleged independent contractor Hyde under the provisions of LSA-R.S. 23:1061 and (3) alternatively, failing to hold plaintiff Zaclc Benton was a direct employee of either Hyde or Pope. Additionally, plaintiff asks for judgment against Hyde and Pope for interest, penalties and attorney’s fees for failure to pay compensation due.
With respect to defendant Pope, plaintiff’s demand is predicated solely and exclusively upon the provisions of LSA-R.S. 23:1061, which reads in full as follows:
“§ 1061. Principal contractors; liability
“Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
“Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee of his dependent, and shall have a cause of action therefor.”
Based on the foregoing statutory provision learned counsel for plaintiff-appellant advances, as a matter of first impression, the ingenious contention that although the jurisprudence of this state is settled to the effect a purchaser is not liable in compensation benefits to the employees of a seller, *727 ■such buyer-seller relationship may not he availed of as a defense and does not shield or insulate a purchaser from the obligation of responding to the compensation claims of the employees of an independent contractor undertaking the work of the principal. In this connection, plaintiff maintains that irrespective of the relationship between Brown and Hyde, any person (including plaintiff) employed in the execution of Pope’s business of cutting pulpwood is entitled to compensation benefits from Pope. Stated otherwise, plaintiff argues that Hyde’s relationship to Pope was that of an independent contractor who undertook execution of work constituting a part of Pope’s business, therefore, regardless of whether the relationship between plaintiff’s employer Brown and Hyde was that of buyer and seller, independent contractor or employer and employee, Pope is liable to plaintiff because Section 1061 of the foregoing statute does not limit compensation liability of Pope as principal to “any employees of the contractor”, but rather extends and projects Pope’s liability to “any employees employed in the execution of the work”.
Conversely, defendants Hyde and Pope maintain the relationship between Brown and Plyde as well as that between Hyde and Pope was that of buyer and seller, therefore, under the firmly established jurisprudence of this state neither Hyde nor Pope is liable in compensation to plaintiff as the employee of Brown whom said defendants contend was a seller quoad Hyde.
The facts from which this litigation springs are not in dispute — only the legal ■conclusions to be drawn therefrom being at issue herein.
It appears that Pope is widely and extensively engaged in the business of buying .and selling timber and pulpwood as well .as the cutting and hauling thereof. He employed as his agent or representative one James E. Curtis, Jr., whose primary duties were to cruise timber, employ so-called “buyers” to purchase pulpwood for Pope’s account, arrange for railway flat cars on which Pope’s “buyers” shipped their purchases to Pope’s customers or consumers and pay said “buyers” the unit price approved and established by Pope for pulpwood purchased for his account.
Acting within the scope of his employment by Pope, Curtis engaged defendant Hyde to act or serve as a “buyer” for Pope. Pursuant to the arrangement between them, Curtis furnished Hyde a “station” at Rose-land, Louisiana, at which Hyde was to purchase wood for Pope. The record reveals that a “station” is merely a site or location at which railway flat cars are placed on a siding for loading of pulpwood in transit to the mill. It is shown without contradiction that Hyde was paid a “fee” or “commission” of $3 per cord unit for all pulpwood purchased for Pope provided it met certain designated specifications as to length and diameter. It is equally clear and certain that the volume of wood Plyde could purchase was restricted, limited and controlled solely and exclusively by the number of flat cars Curtis made available to him for loading. In pursuance of said arrangement, Hyde used his truck as an office by parking it in the vicinity of the siding on which the flat cars were situated and there awaited the arrival of any seller desiring to dispose of pulpwood. It further appears that in this manner Hyde bought pulpwood from various sellers ranging in quantity from an entire truck load to a few pieces brought to Hyde’s station by individuals in the trunks of their automobiles. As these sellers arrived at the station with their wares, Hyde purchased their pulp at a fixed price per cord after first determining the sticks met Pope’s requirements as to dimension. All purchases made by Hyde were then loaded on the flat cars and dispatched to mill per Curtis’ orders and instructions. If any of the wood purchased by Hyde did not meet with Curtis’ specifications it was culled at the mills and Hyde received no payment therefor. Hyde had no quota of purchases as such although he readily conceded his relation *728 ship with Pope would terminate if he made no purchases whatsoever. There is little question but that Hyde’s capacity to purchase was limited by the number of railway cars made available to him by Curtis. Curtis placed no restrictions on Hyde with respect to the individuals from whom Hyde might purchase wood. It is also shown that Hyde employed his own funds in paying for wood purchased and was reimbursed weekly by check from Pope through Curtis.
Approximately five months prior to plaintiff’s injury, plaintiff’s employer, Brown (who by Brown’s own admission was engaged in the business of buying, selling, cutting and hauling pulp), approached Hyde with the view of arranging to sell pulpwood to the latter. Hyde informed Brown that he would purchase pulpwood brought to the Roseland station whereupon Brown then contacted one Travis and arranged to purchase timber belonging to Travis growing on land owned by an undisclosed party from whom Travis held a lease giving Travis the right to cut certain timber situated thereon. During the negotiations between Brown and Travis for the sale of the timber, Brown suggested (apparently as an incentive to Travis) that he, Brown, would have Hyde withhold the stumpage due Travis for all wood purchased by Brown from Travis and sold to Hyde. In conformity with his agreement with Travis, Brown employed plaintiff to cut the wood purchased from Travis, and load and haul it to Hyde’s station at Roseland.
It appears beyond question that Brown owned his own truck, received no advances from either Travis or Hyde and was not required to deliver any certain quantity of wood to Hyde. No control was exercised by Hyde over Brown’s activities and Hyde could have refused to purchase wood from Brown at any time irrespective of the source from which Brown had obtained it. Similarly it is shown that Brown did in fact sell some of the wood purchased from Travis to persons other than Hyde and in those sales also the stumpage due Travis by Brown was withheld by the respective purchasers. Travis’ testimony shows he sold the pulpwood to Brown because knowing Brown he felt he could trust Brown, without the necessity of checking his operations. He corroborated Brown’s testimony that it was Brown who arranged for Hyde to retain stumpage and that he periodically contacted Hyde to accept payment of stumpage due by Brown.
It is the settled jurisprudence of this state that liability for workmen’s compensation benefits is predicated upon the legal relationship between the parties and for such liability to attach the relationship must be that of employer and employee. Hano v. Kinchen et al., La.App., 122 So.2d 889; Cerie v. Malone et al., La.App., 125 So.2d 254.
Additionally, the law of this state is well established to the effect that a purchaser is not liable in compensation to the employees of a seller since there is no legal relationship of employer and employee existing between the purchaser and the employees of the vendor. Taylor v. Employers Mutual Liability Insurance Company et al., 220 La. 995, 58 So.2d 206; Anthony v. Natalbany Lumber Company, Ltd., La.App., 187 So. 288; Williams v. George, La.App., 15 So.2d 823; McDonald v. Hammond Box Company, La.App., 17 So.2d 39; Smith v. Crossett Lumber Company, La.App., 72 So.2d 895. See also LSA-R.S. 23:1021 et seq.
Esteemed counsel for plaintiff recognizes but severely criticizes the soundness of the jurisprudence exempting a buyer from liability in compensation benefits to the employees of a seller contending the doctrine is a judicially created “loophole” repugnant to and in contravention of the letter as well as the spirit of the compensation, laws of this state. We perceive no cogent reason to herein defend the pronouncements of the appellate courts of this state on the subject matter presently under consideration except to state we believe the decisions themselves evidence not only the *729 soundness of the rule but also its compatibility with and conformity to the express and implied provisions of the workmen’s compensation law of this state as presently written.
No citation of authority is deemed necessary in support of the fundamental legal principle that the relationship of one party to another is a question of fact to be resolved in the light of the circumstances of each individual case.
LSA-R.S. 23:1021(6) defines the term “independent Contractor” as follows:
“ ‘Independent Contractor’ means any person who renders service, other than manual labor * * * for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, etc.”
We herewith reiterate with approval the following appropriate language appearing in Durant v. Industrial Lumber Company, La.App., 6 So.2d 164, 166, wherein we interpreted the term “independent contractor” as employed in LSA-R.S. 23:1021(6) :
“A careful reading of the definition of an ‘independent contractor’ as given in the above quoted extract from the Compensation Law indicates two principal elements or criteria to be considered in determining whether or not a person performing services for another in one of the hazardous trades or businesses is an independent contractor. The first element is the performance of a specified piece of work as a whole or as a unit for a specified price for the whole or for any unit of the service. And the second element relates to the control of the person performing the service over the means and methods by which the work is performed so as to accomplish the work as a unit or as a whole.”
We also note the following pertinent language appearing in the Durant case, supra, the source thereof being given as 27 Am. Jur., Verbo, Independent Contractor, Page 485, Section 5:
“Althottgh it is apparent, from an examination of cases involving the independent contractor relationship, that there is no absolute rule for determining whether one is an independent contractor or an employee, and that each case must be determined on its own facts, nevertheless, there are many well-recognized and fairly typical in-dicia of the status of an independent contractor, even though the presence of one or more of such indicia in a case is not necessarily conclusive.”
We find the record clearly and unequivocally establishes the relationship between Brown and Hyde to be that of buyer and seller. It appears without contradiction there was absolutely no connection or relationship between Travis and Hyde quoad the timber purchased by Brown from Travis. Brown purchased directly from Travis, employed plaintiff to cut and haul the pulpwood to Hyde and furnished the truck in which the hauling was accomplished. Brown received no advances from either Hyde or Travis and was free to sell the wood wherever he chose. No amount was withheld by Hyde for compensation insurance on Brown’s employees. Hyde neither exercised nor had the right to any degree of control whatsoever over Brown or plaintiff and was as free to discontinue purchases from Brown as Brown was to cease sales to Hyde. That Hyde specified the dimensions of the wood purchased from Brown is of no moment since under the circumstances existing herein, it would have been ridiculous in the extreme for Hyde to purchase pulpwood unacceptable to Pope. Learned counsel for plaintiff seizes upon the fact that Hyde withheld stumpage due Travis by Brown and contends this indicia of control characterizes Brown an employee of Hyde. It is well settled that such circumstance alone does not constitute one either an *730 employee or independent contractor thereby taking him out of the buyer-seller relationship. Taylor v. Employers Mutual Liability Insurance Company et al., 220 La. 995, 58 So.2d 206; Cerie v. Malone, La.App., 125 So.2d 254. Moreover, the record in the instant case reflects that it was Brown who requested Hyde to withhold Travis’ stumpage and that such withholding was accomplished purely for the purpose of accommodating Brown and was neither intended nor utilized by Hyde as an element of control over Brown’s operations.
After careful consideration of the facts and circumstances appearing in the record of the case at bar, we are impelled to conclude the relationship between Hyde and Pope was neither that of buyer and seller as found by the learned trial court nor that of principal and independent contractor as contended by astute counsel for plaintiff but rather that of employer and employee. In his brief esteemed counsel for plaintiff gives the following excellent analysis of the factual relationship between Hyde and Pope:
“Plaintiff-Appellant herein contends, primarily, that the defendant-appellee, Hyde, did not occupy the position of mere vendor quo ad Pope, his co-defendant. As we have shown above, he had never been in the wood buying business at all prior to his meeting with Curtis, Pope’s manager; and he was not in a position to carry out a normal business of buying wood to sell to whomever he chose. There were no facilities whatever for him to merely buy wood and hold it for resale. His ‘station’ had no physical existence at all; it consisted merely of the intangible arrangement or contract which he had with Pope. It was Pope who furnished the ten or twenty freight cars per week and paid for the hauling to the mill; and it was Pope’s man, Curtis, who made all the arrangement as to placing the freight cars. It is ridiculous to suggest that Hyde was buying wood in the open market and was free to sell to whom he chose. This wood brought in by the truck load was measured by Hyde and placed directly in the freight cars, which cars were controlled by Pope. If Hyde did not ‘sell’ to Pope, there was nothing to be done with the wood except to stack it on the side of the road where he had no facilities and had no right to store anything.
“We contend that Hyde was actually an independent contractor who was paid at the rate of Three Dollars ($3.-00) per cord for the wood which he weighed and loaded at the Roseland Station. This fact, we submit changes the factual picture considerably from that found in the Taylor case, which case the lower court cited in its reasons for judgment. This difference we shall show presently; but first it is necessary to relate the status of Willie Brown who hauled the wood to Hyde at the Roseland Station.”
We believe the foregoing evaluation accurately and correctly portrays the circumstances governing the relationship between Hyde and Pope and heartily concur therein. We further believe that beyond the shadow of a doubt such relationship characterizes Hyde as Pope’s employee and we so hold without the least hesitation.
That Pope had absolute control over not only the results of Hyde’s work but also the sole and only means by which such work was to be performed, (namely, control of the railway cars without which Hyde could not operate), is amply demonstrated in the record and conceded by counsel for plaintiff as hereinabove set forth in the excerpt taken from counsel’s brief. Not only did Pope control the means and facilities by which the work was to be done, but also there is not the slightest doubt he had absolute, unrestricted and unlimited management and control thereof. Such circumstance is patently inconsistent with the status of “independent contractor” as de *731 •fined in LSA-R.S. 23:1021(6). Hyde’s principal duties were to purchase pulpwood for Pope’s account. He was subject to dismissal at any time, he possessed no ■contract with Pope for a fixed term or ■designated number of units and Hyde himself could terminate the relationship at any time. The fact that he kept no regular hours and was paid on a fee or commission “basis of so much per cord unit is of no ■material importance in view of the circumstances as a whole. It is undisputed Tiis purchases varied considerably from day to day and were governed by the daily volume of wood brought to his station and offered him for sale, the clear inference “being that for this reason his compensation was fixed on a fee or commission basis instead of at a daily or hourly rate. The fact that Hyde infrequently made sales to persons other than Pope does not constitute Hyde an independent contractor as contended by learned counsel for plaintiff. Unquestionably Pope permitted such practice without obj ection or complaint but such •circumstance is inconsequential in view of all of the evidence of record relative to the relationship between Hyde and Pope.
Hyde was employed to perform not a ■specific piece of work but a specific, continuing daily task, namely, the purchase of pulpwood to the limit of the capacity of the transportation facilities placed at his disposal by Pope through Pope’s agent Curtis. ■Control of the results of Hyde’s principal work and duties rested solely in Pope considering Pope determined the amount and kind of wood Hyde could purchase as well as the price Hyde paid therefor.
The fact that Curtis in his testimony referred to Hyde as a “buyer” is of no importance. The nomenclature indulged in by the parties to a transaction does not necessarily control or establish the particular nature of a given relationship but rather the aggregate of the facts and circumstances attending each particular case. Unquestionably Hyde was an employee of Pope whose duties were that of buyer. He did not, however, enjoy the freedom, independence and absence of control characteristic of the class and category of sellers whose employees are denied recovery of compensation benefits from purchasers buying from their vendor-employers.
The fact that sole, absolute, unlimited and unrestricted control of the means, facilities and equipment employed by Hyde in the performance of the services rendered, and without which he could not have rendered any services whatsoever, vested in Pope, clearly precludes Hyde’s classification as “independent contractor” within the meaning of the term as found in LSA-R.S. 23:1021(6).
Having concluded Hyde to be the employee of Pope it follows that his action in purchasing pulpwood from Brown is of the same legal effect as if Pope consummated the transactions in person.
It follows, therefore, defendant Pope may not be held to respond in workmen’s compensation benefits to an employee of his vendor Brown. Anthony v. Natalbany Lumber Company, Ltd., La.App., 187 So. 288; Williams v. George, La.App., 15 So.2d 823; McDonald v. Hammond Box Company, La.App., 17 So.2d 39; Taylor v. Employers Mutual Liability Insurance Company et al., 220 La. 995, 58 So.2d 206; Smith v. Crossett Lumber Company, La. App., 72 So.2d 895; Hano v. Kinchen et al., La.App., 122 So.2d 889.
In view of the foregoing it is unnecessary that we comment or pass upon plaintiff’s contention Pope is liable to plaintiff herein under the provisions of LSA-R.S. 23 :1061 on the theory Hyde is an independent contractor. Having found Hyde to be the employee of Pope any pronouncements regarding Pope’s liability predicated on the assumption Hyde was an independent contractor would be purely and simply obiter dicta.
Judgment affirmed.