HOOD, Judge.
This is a workmen’s compensation suit instituted by Bentley B. Bryant against the compensation insurer of Mullins & Parker, a partnership domiciled in Natchez, Mississippi. The State Confederate Memorial Medical Center intervened to recover a sum of money alleged to be due it for medical services rendered to the claimant as a result of his injuries. After trial on the merits, judgment was rendered by the trial court in favor of the plaintiff, awarding compensation benefits based on total and permanent disability, and in favor of the intervenor for the greater portion of the amounts claimed by it. The defendant-insurer has appealed.
There is no issue as to disability or as to the rate of compensation which plaintiff would be entitled to receive if it is determined that he is entitled to recover at all under the compensation act. The principal question presented on this appeal concerns the relationship which existed at the time of the accident between the defendant’s insured, Mullins & Parker, on the one hand, and plaintiff-Bryant on the other. Plaintiff contends primarily that an employer-employee relationship existed between them, and in the alternative, that plaintiff was an independent contractor of Mullins & Parker, with a substantial part of plaintiff’s work time being spent in manual labor carrying out the terms of that contract. Plaintiff takes the position that under either circumstance he is entitled to recover from defendant under the Louisiana Workmen’s Compensation Act, and accordingly, that the judgment of the trial court should be affirmed. Defendant contends that the relationship between Bryant and Mullins & Parker was solely that of vendor and ven-dee, and accordingly, that the trial judge erred in holding that plaintiff is entitled to recover workmen’s compensation benefits.
Under the Louisiana Workmen’s Compensation Act a mere purchaser of pulpwood is not liable for compensation benefits for accidental injuries sustained by the seller or his employees. Taylor v. Employers Mutual Liability Insurance Company, 220 La. 995, 58 So.2d 206; Garner v. Southern Pulpwood Insurance Co., La. App. 3 Cir., 149 So.2d 157; Dunn v. Southern Pulpwood Insurance Company, La.App. 2 Cir., 141 So.2d 882; Benton v. Pope, La.App. 1 Cir., 130 So.2d 724; Cerie v. Malone, La.App. 3 Cir., 125 So.2d 254.
If the evidence in this case establishes, therefore, that Bryant was merely selling pulpwood to Mullins & Parker, then Bryant clearly would not be entitled to recover compensation benefits from defendant, and the judgment of the trial court must be reversed. Plaintiff, on the other hand, would be entitled to compensation benefits, and the judgment of the trial court must be affirmed, if it is determined from the evidence that at the time of the accident: (1) Bryant was an employee of Mullins & Parker, within the meaning of the Workmen’s Compensation Act; or (2) that Bryant was an independent contractor for Mullins & Parker, with a substantial part of Bryant’s work time being spent in manual labor in carrying out the terms of the contract. See LSA-R.S. 23:1021(6); Sam v. Deville Gin, Inc., La.App. 3 Cir., 143 So. 2d 838 (Cert. denied) ; Rashall v. Fallin & Savage Timber Company, La.App. 3 Cir., 127 So.2d 238; and Welch v. Newport Industries, Inc., La.App. 1 Cir., 86 So.2d 704 (Cert. denied).
The evidence shows that during the year 1959 Mullins & Parker operated a merchandising establishment in Natchez, Mississippi, selling chain saws, lawn mowers, axes, go carts and small engines, and it also engaged extensively in the business of buying and selling pulpwood. Pursuant to *97 some understanding or arrangement between this partnership and International Paper Company, Mullins & Parker was the exclusive supplier of pulpwood from the surrounding territory to the International Paper Company Plant in Natchez, Mississippi. Under this arrangement the International Paper Company purchased solely through Mullins & Parker the pulpwood which was produced from the Parishes of Concordia, Tensas, Catahoula or Rapides, in Louisiana, as well as from some areas in Mississippi.
Mullins & Parker itself produced no pulpwood. It did not maintain a pulpwood yard or stockpile, it employed no pulpwood crews and it owned no operating pulpwood equipment. The working arrangement between International Paper Company and Mullins & Parker was that each week the latter received from the Paper Company a “purchase order” for a certain number of cords of pulpwood to be delivered to the Paper Company Plant, in Natchez, during the following week. Upon receipt of this purchase order each week, Mullins & Parker apportioned the orders among a number of “pulpwood producers” by allotting to each such producer a certain number of “tickets,” a ticket being an order for one load of pulpwood. Each ticket was actually a purchase order issued by Mullins & Parker instructing the International Paper Company to accept a load of wood from the bearer of that ticket, and to pay to Mullins & Parker the agreed price for that load.
The International Paper Company would not accept a load of pulpwood brought to its plant unless the producer presented with the load one of these “tickets” from Mullins & Parker. If the producer had such a “ticket,” and if the load of wood met all of the Company’s specifications, including its requirements as to the kind, size, length and quality of wood, then the Paper Company would accept the load, and would pay Mullins and Parker for it later that week.
Each Saturday the pulpwood producers who had delivered wood to the International Paper Company for the account of Mullins & Parker were paid by Mullins & Parker for the pulpwood cut and hauled by them that week. Usually Mullins & Parker deducted from the amount paid to a producer the amount owed by the producer to the landowner for stumpage, the amounts due as severance tax, and any amounts which may have been due by the producer to Mullins & Parker for repairs or advances made during the week. Any deductions of that nature, however, were made pursuant to a prior understanding or agreement with the purchaser. Ordinarily the deduction for stumpage was made because the landowner had requested, and the producer had consented, that that be done in order that the landowner could be assured of receiving the amount due him as stump-age. No deductions were made by Mullins & Parker at any time as premiums due for workmen’s compensation or public liability insurance.
At these Saturday settlements each pulpwood producer who applied was usually given “tickets” or purchase orders for the number of loads of pulpwood which he felt that he could cut and deliver to the Paper Company Plant during the following week. While the mill was operating at full capacity, these tickets were plentiful and a pulpwood producer usually could obtain all of the tickets he wanted. At times when the mill was not operating at full capacity, however, the Paper Company did not purchase much pulpwood, and the pulpwood producers were limited as to the number of tickets or purchase orders which they might obtain.
When a pulpwood producer received tickets or purchase orders from Mullins & Parker for the delivery of pulpwood to International Paper Company, he was under no obligation to deliver the number of loads of wood represented by those tickets. He would be paid only for the loads which he did actually deliver, but he would not be liable to Mullins & Parker or to International Paper Company for having failed to deliver a load for each ticket .which he *98 had received. If the wood which the producer delivered to the Paper Company did not meet the specifications of that Company, the load would be refused and no obligation would be incurred on the part of the Paper Company or Mullins & Parker.
The Johns Manville Company also purchased pulpwood which was produced in that area,- but that Company looked to someone other than Mullins & Parker to keep them supplied. They apparently purchased little or no pulpwood from Mullins & Parker, and certainly a pulpwood producer did not have to obtain a purchase order or ticket from Mullins & Parker in order to sell to Johns Manville. A pulpwood producer, and particularly the plaintiff in this suit, was under no obligation to sell- to Mullins & Parker the pulpwood produced from lands on which he owned the timber rights. He was free to sell the pulpwood which he produced from those tracts to anyone, but since International Paper Company and the Johns Manville Company apparently were the only two mills which used pulpwood in that area, the market was somewhat limited.
In some instances Mullins & Parker owned or purchased the timber rights on tracts from which pulpwood was produced, but ordinarily the pulpwood producers themselves made their own arrangements with the landowner for the pulpwood. It was estimated by Mullins & Parker that about 30 percent of the pulpwood which they sold to International Paper Company was produced from lands on which that firm had the timber rights, while about 70 percent of the pulpwood which was sold to International Paper Company was produced from lands on which Mullins & Parker had no rights at all.
Bryant, the plaintiff in this suit, was a pulpwood producer during the year 1959. He owned three or four trucks and all of the equipment which he needed in order to produce pulpwood. He employed and paid his own crews and he alone supervised and directed his crews in cutting or producing pulpwood. During the week beginning May 25, 1959, Bryant had planned to cut timber from a tract of land owned by the Blanche Estate. Bryant had made his own arrangements with the owners of that tract for the timber, and Mullins & Parker had no interest in the timber located on that land. Bryant agreed with the owners of the Blanche property that he would cut and remove cottonwood trees as well as other types of timber from that land. He planned to sell as much of the timber from that tract as he could to International Paper Company, through Mullins & Parker, but since that Company usually would not accept cottonwood, he intended to sell at least the cottonwood cut from the Blanche property to the Johns Manville Company or to any other purchaser who would buy it. Although Bryant at various times had cut pulpwood from lands on which Mullins & Parker owned the timber rights, he was engaged exclusively in cutting from the Blanche property, on which he himself owned the timber, during the week in which the accident occurred.
In the past Bryant had delivered and sold pulpwood to both Johns Manville and to International Paper Company, although he testified that the great majority of the pulpwood which he produced was delivered to International Paper Company because he preferred to sell to it. -According to his testimony, the reason why he preferred to sell to the International Paper Company was that employees of that Company unloaded his truck when the delivery was made, whereas it was necessary for him to unload the truck himself when he delivered to Johns Manville.
Bryant cut and hauled pulpwood from the Blanche property on Monday, May 25, 1959. On the following day, May 26, however, he made no attempt to go into the woods and cut timber because two of his power driven saws had broken down and had to be repaired. On Tuesday morning, May 26, Bryant took one of his saws to the Mullins & Parker establishment in Natchez for the purpose of having it repaired. He *99 then returned to his home and began repairing the other saw. About 4:00 or 5:00 o’clock that afternoon he found that he needed some parts for the second saw, and he thereupon set out in his pickup truck to go to Natchez to purchase the needed parts. In route to Natchez for that purpose he was involved in a motor vehicle collision which caused the injuries which form the basis for this compensation claim. Bryant acknowledges that Mullins & Parker was under no obligation to repair either of these saws, and Bryant intended and expected to pay Mullins & Parker for any repair work done to them or for parts purchased for them.
On these facts, the trial judge found that although Mullins & Parker has not exercised supervision and control over Bryant and his operations, it had the right to do so, and accordingly, he concluded that Bryant was an employee of Mullins & Parker and was covered by the Workmen’s Compensation Act. In arriving at that conclusion the trial court relied on the case of Collins v. Smith, La.App. 2 Cir., 13 So.2d 72.
We feel that Collins v. Smith, supra, is not applicable because there the decedent was merely employed to haul pulpwood, which was owned by his employer and which had already been cut and stacked, from one location to another. The employer clearly had the right to direct these hauling operations.
We find no distinction between the issues presented in this case and those presented in Taylor v. Employers Mutual Liability Insurance Company, supra (58 So.2d 206); Garner v. Southern Pulpwood Insurance Co., supra (149 So.2d 157) ; and Cerie v. Malone, supra (125 So.2d 254). In each of the cited cases, where the facts were almost identical with those presented here, it was determined that only a vendor-vendee relationship existed between the parties, and accordingly, that there was no coverage under the Workmen’s Compensation Act.
In the Taylor case, supra, the decedent purchased the standing timber from the landowner, felled the trees and hauled them to the mill site of the defendant-lumber company in his truck. If the logs were accepted the defendant paid the stumpage charge directly to the landowner and it paid the balance due for the load to the decedent. As in the instant suit, “there was an understanding as to the length and the diameter of the logs to be accepted and the price per thousand feet log measure to be paid for each species of timber,” but title to the logs remained in the decedent until accepted, and any logs rejected by the mill remained the property of decedent. The defendant exercised no supervision over the decedent in his logging operations, and the decedent was free to sell his logs to some other purchaser without incurring any obligation to the lumber company. Under those circumstances our Supreme Court held that “the relation betweén the deceased and the defendant lumber company was simply that of vendor and vendee.”' The same circumstances, we think, exist in the instant suit.
Similar facts were presented in the Garner and Cerie cases, and in each of those suits we held that the relationship between the parties was merely that of vendor and vendee. In Cerie v. Malone, supra, we said:
“ * * * Suffice it to say that we are impressed with the validity of defendant’s contention that the relationship betzveen himself cmd Harmon was that of vendor-vendee. There was no control by defendant of Harmon nor a devious manner of employment so as to cast doubt on the relationship. Harmon used his own equipment; hired his own workers; obtained pulpwood wherever he chose; and was not required to sell to defendant. The mere fact that defendant' loaned Harmon money to buy a motor which was to be repaid in pulpwood does not negate the vendor-vendee relationship. Under these circumstances there is no principal-contractor relationship.” -(Emphasis added, 125 So.2d 256.)
Other cases which we think are pertinent and which we have considered are: Dick *100 v. Gravel Logging Co., 152 La. 933, 95 So. 99; Stevens v. Mitchell, 234 La. 977, 102 So.2d 237; Kline v. Dawson, 230 La. 901, 89 So.2d 385; Dunn v. Southern Pulpwood Insurance Company, supra (141 So.2d 882) ; Benton v. Pope, supra (130 So.2d 724); Smith v. American Employers Insurance Company, La.App. 2 Cir., 130 So.2d 494; Hatten v. Olin Mathieson Chemical Corp., La.App. 2 Cir., 112 So.2d 135; Phillips v. Consolidated Underwriters, La.App. 2 Cir., 108 So.2d 251 (Cert. denied); Smith v. Crossett Lumber Co., La.App. 2 Cir., 72 So.2d 895; Deason v. Coal Operators Casualty Co., La.App. 2 Cir., 43 So.2d 630; Williams v. George, La.App. 2 Cir., 15 So.2d 823; Owers v. Louisiana Long Leaf Lumber Co., La.App. 1 Cir., 14 So.2d 275. We also have considered the comments of Professor Wex S. Malone in XIX Louisiana Law Review, 342, and in his excellent treatise, “Louisiana Workmen’s Compensation ■Law and Practice,” Chapters 3 and 4.
The evidence in the instant suit establishes that Mullins & Parker exercised no supervision or control over Bryant in the cutting or production of pulpwood from the Blanche tract. Bryant himself made arrangements with the owners of that tract to cut the timber. He was under no obligation to deliver or to sell it to Mullins & Parker, but on the contrary, he was free to dispose of the timber which he cut in any manner he saw fit. Bryant, in fact, had agreed with .the landowner to-cut and remove several types of wood from the land, some of which would not be purchased by Mullins & Parker, so he planned to sell at least a portion of the wood produced from that tract to other purchasers. He would not be liable to Mullins & Parker if he failed to cut or to deliver to them any wood from that tract, and there would be no liability on the part of Mullins & Parker in the event a load of wood cut by him was rejected by the Paper Company. The title or ownership of the load of wood cut from the Blanche tract remained in plaintiff until it was sold by him. Under those circumstances :we think the relationship, which existed between Bryant and Mullins & Parker was simply that of vendor and vendee.
Plaintiff argues, however, that in this case the arrangements between Mullins & Parker and Bryant were such that the former had the right to control Bryant’s operations, because Mullins & Parker, as the exclusive suppliers of pulpwood to International Paper Company, had the right and power to stop plaintiff from delivering pulpwood to that plant by refusing to issue purchase order tickets to him. It is argued that the relationship of employer and employee exists where one party has the right to exercise control or supervision over the other, even though he may not exercise that right.
We agree that in determining whether an employer-employee relationship exists, one of the important factors to consider is whether the alleged employer has the right to exercise control or supervision over the operations of the other party. In Hatten v. Olin Mathieson Chemical Corp., supra, our brothers of the Second Circuit said:
“The right to exercise control or supervision over an operation is a factor to be considered in establishing the relationship of the parties involved. The fact that the employer did not exercise control or supervision is not a true test in determining one cutting pulpwood and delivering it by his truck was or was not an employee. The true test is whether the employer has the right to exercise control and/or supervision over the operations. Where such right to control or supervision existed over operations in cases of the character of the present one, the, relation of employer and employee arises. * * *” (Emphasis added, 112 So.2d 139.)
And, in Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, our Supreme Court said:
“It is well settled by our jurisprudence that besides other factors, the most important test in determining *101 'whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.’ It is also.well settled that whether the employer ‘actually exercises control or supervision’ over the movements and the services rendered by the employee, such a fact is of no great moment, the ‘important question is whether, from the nature of the relationship, he had the right to do so.’ ” (79 So.2d 486.)
In the instant suit, however, we find that Mullins & Parker did not have the right to exercise control or supervision over the operations of Bryant. It is true that it had the exclusive right to supply pulpwood to the International Paper Company, and that it could at any time refuse to issue any more purchase orders or tickets to Bryant, or to any other pulpwood producer, without incurring liability. In our opinion, however, the mere fact that Mullins & Parker had the right to quit purchasing pulpwood from Bryant does not constitute the exercise of such control over Bryant’s operations as to make him an employee of Mullins & Parker within the meaning of the workmen’s compensation law. Actually, there was another market for pulpwood in that area besides International Paper Company. But, even if that Company was the sole user or consumer of pulpwood, and Mullins & Parker had the exclusive right to supply it, we feel that that circumstance would not give Mullins & Parker the type of control over Bryant’s operations sufficient to establish an employer-employee relationship between them. If that were true, then it may follow that every rice buyer would have to be classified as the employer of a farmer from whom he regularly purchases rice, simply because he has the right and power to discontinue buying rice from that farmer.
Plaintiff contends, alternatively, that he was an independent contractor for Mullins & Parker, that a substantial part of his work time was spent in manual labor carrying out the terms of that contract, and accordingly, that under the provisions of LSA-R.S. 23 :1021(6) he is covered by the Louisiana Workmen’s Compensation Act. There is no question but that a substantial part of Bryant’s work time was spent in manual labor in cutting and hauling the pulpwood which he delivered to the Paper Company for the account of Mullins & Parker.
LSA-R.S. 23:1021(6), as amended in 1948, provides:
“ ‘Independent Contractor’ means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.”
In Shelton v. Barber Brothers Company, La.App. 1 Cir., 94 So.2d 489, the First Circuit Court of Appeal, in distinguishing between an employee and an independent contractor, said:
“As contrasted to an employee, an independent contractor is one independent in business who contracts to perform a specified piece of work for another for a specified price, without being subject in the performance of the contract to the control and direction of his employer except as to the result contracted for; which contract is not subject to termination or discontinuance at the will of either party without a corresponding liability for its breach. * * ” (Emphasis added, 94 So.2d 490.)
*102 And, in Amyx v. Henry & Hall, supra (79 So.2d 483), the Supreme Court said:
. “ * * * A contractee-independent contractor relationship presupposes a contract between the parties. It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific piecework as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specified price for the overall ■undertaking is agreed upon; that its duration is for a specified time and not iubject to termination or discontinuance -at the will of either side without a corresponding liability for its breach.” (Emphasis added, 79 So.2d 486.)
We have already pointed out that in the iñstant suit no contract of any kind was entéred into between Bryant and Mullins & Parker. Bryant did not obligate himself to cut 'or-deliver any specific quantity of pulpwood, or to accomplish a specified result either as a unit or as a whole. Even though he received tickets from Mullins & Parker setting but the type of pulpwood which the pappr mill would purchase, he incurred no ■obligation to anyone if he chose not to deliver any wood at all. Neither was there any liability on the part of Mullins & Parker if it should have failed or refused to issue purchase orders or tickets to Bryant. In our opinion, therefore, no contractual relationship existed between Mullins & Parker and Bryant, and accordingly, we find no merit in plaintiff’s argument that he was an independent contractor for Mullins & Parker.
Finally, plaintiff contends that the fact that Mullins & Parker paid directly to the landowner the stumpage charge due on each load of wood hauled by Bryant indicates that an employer-employee, or at least a principal-independent contractor, relationship existed between the parties.
The fact that the purchaser of pulpwood deducts the stumpage price from the amount due the producer, and pays the sum due for stumpage directly to the landowner, does not make the producer an independent contractor or an employee of the purchaser within the meaning of the Louisiana Workmen’s Compensation Act. Taylor v. Employers Mutual Liability Insurance Company, supra; Garner v. Southern Pulpwood Insurance Co., supra; and Benton v. Pope, supra.
We are aware of the fact that in a number of cases involving the harvesting of pulpwood the courts of this State have held that an employer-employee, or a principal-independent contractor, relationship existed between the buyer and the producer of that wood. See Stevens v. Mitchell, supra (102 So.2d 237) ; Jones v. Hennessy, 232 La, 786, 95 So.2d 312; and Kline v. Dawson, supra (89 So.2d 385). All of those cases are factually distinguishable from the instant suit, however, as is clearly shown by our discussion of each such case in the recent case of Redding v. Cade, La.App. 3 Cir., 158 So.2d 880. The last-cited case, Redding v. Cade, also is not applicable because of important differences in facts. In that case the purchaser, Continental Can Company, owned the land on which the timber, was cut. It allegedly sold to Cade certain trees which were marked by Continental. These trees were cut by Cade and hauled to Continental’s paper plant where they were immediately “re-purcliased” by Continental for a higher price, the difference in price being Cade’s earnings for cutting the timber. Continental specifically retained the right to inspect the cutting operations and Cade was required to remove the trees “in one continuous operation.” Under those circumstances we found that a principal-independent contractor relationship existed between Continental and Cade. In the instant suit, of course, the purchaser did not own the timber which was cut and the *103 producer was under no obligation to the eventual purchaser to cut and remove any pulpwood at all.
There is nothing in the evidence in the instant suit which causes us to view with suspicion the business relations which existed between Mullins & Parker and Bryant or between Mullins & Parker and the landowner. We find nothing to indicate that a middleman or intermediary has been interjected, or that any other device has been employed, for the purpose of circumventing the compensation law contrary to the purpose and intent of the Legislature in adopting it. Mullins & Parker did not deduct any amount from the payments made to Bfyant for pulpwood as premiums for workmen’s compensation insurance. No representation had been made to Bryant that he was covered by workmen’s compensation insurance, and there is no indication that Bryant was heavily indebted to Mullins & Parker so that as a practical matter the latter controlled his operations. Considering all of the evidence in this case, we conclude that the relationship between Bryant and Mullins & Parker was solely that of vendor and vendee, and that the trial judge erred in holding that he was an employee within the meaning of the Compensation Act.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, and against plaintiff and inter-venor, rejecting the demands of said plaintiff and intervenor at their costs. The expert witness fee of Dr. Jack H. Phillips is fixed at $50.00 and that amount, together with the sum of $21.90 being the court reporter’s fee for the taking of his deposition, is allowed and taxed as costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed and rendered.