TATE, Judge
(concurring in denial).
The result of our decision is to leave this injured workman, Monroe, with an empty judgment against Malcolm, his immediate employer, who according to the record is himself now crippled and without income or assets.
Both Monroe and Malcolm were injured while working to produce pulpwood for Forest Products, the “broker” or “dealer”. Forest Products in effect had ordered from Malcolm, the “hauler”, the production of a certain number of cords and its delivery to the International Paper Company’s plant; it was in producing this wood that Monroe (and later Malcolm) was injured.
It is important to note that International Paper had purchased this wood from Forest Products, not from Malcolm. The workman was injured as a part of Malcolm’s crew producing pulpwood for Forest Products, not for the open market. For the reasons fully stated in the writer’s dissent in Bryant v. United States Fidelity & Guaranty Co., La.App. 3 Cir., 163 So.2d 95, 103, the writer believes strongly that the only realistic description of the economic relationship between Forest Products, the dealer, and its haulers or “contractors” such as Malcolm, is that the latter are either employees or independent contractors of Forest Products employed at so much per cord to process timber into pulpwood and to deliver it to International Paper. These haulers and their crews are employed to process and deliver pulpwood for Forest Products’ purchase-order with International Paper; they are not producing the wood for sale or resale upon the open market. Their economic activity is solely determined by the portion of Forest Products’ quota allowed to them each week, and the pulpwood they produce cannot, practically, be delivered elsewhere.
The evidence is explicit and uncontradict-ed that no hauler could deliver pulpwood to International Paper or to any other plant in the area except pursuant to prior arrangements with one of the four or so dealers who had standing arrangements with the paper plants by which they the dealers received weekly purchase-orders or “quotas” of pulpwood. The haulers produced wood, not as sellers on the open market, but rather as those previously employed to fill a particular dealer’s order. The dealer accomplished delivery of his weekly purchase-order by contracting out portions of his quota to various impecunious one- or two-truck haulers, who themselves performed the work of cutting and hauling pulpwood — but this activity, to repeat, was predetermined by the dealer’s direction as to the number and variety of cords of pulp *169 wood to be produced each week for the dealer’s account, in order for the latter to fill its purchase-order.
The Supreme Court denied writs in Bryant, stating that “On the facts found by the Court of Appeal, we find no error of law in its judgment.” 246 La. 375, 164 So.2d 360. This denial may have been based upon the Bryant’s majority finding that the injured 'contractor “was free to dispose of the timber which he cut in any manner he saw fit”. 163 So.2d 100. It may be well, therefore, to point out that in the present case any alleged freedom of the hauler to sell on the open market is more clearly shown to be illusory. It is not impossible that the Supreme Court will wish to examine in detail the nature of the present economic arrangements by which the dealer, the true procurer of each cord of pulpwood produced, is enabled to engage in the large-scale production of pulpwood to satisfy the dealer’s orders thorough impecunious intermediaries without exposing itself to compensation liability to workmen injured producing pulpwood for the dealer.
The evidence pretty clearly reflects that no hauler could sell wood to the pulpwood plants in the. area unless they had a prior allocation from a dealer of a portion of the dealer’s quota or purchase-order. Malcolm, the present hauler, testified that, by virtue of specific agreement as well as the custom of the industry, a hauler worked exclusively for one dealer and delivered his entire pulpwood production to such dealer only. Tr. 167, 496. Technically, the dealer might not have been able to prevent the hauler from selling elsewhere if there had been any other market, Tr. 457, 488, but as a matter of fact, there was no other market for pulpwood produced because a hauler could not secure a permit or quota to deliver wood for another dealer while he was working for one dealer.
The facts of this case illustrate the arrangement. Malcolm worked exclusively for one dealer up until early June. He was then in effect discharged. He then made arrangements with Forest Products to haul exclusively for it
This is actually corroborated by the testimony of George, the president of Forest Products. As to a hauler’s freedom to sell pulpwood, he stated: “He can sell wood to anybody that he has an agreement to buy his wood from him.” Tr. 382. However, he testified, such an agreement “must be arranged in advance.” Tr. 383.
In all recent instances when the Supreme Court itself has scrutinized an arrangement such as the present, it has held an alleged “buyer” to be in reality a principal or employer responsible in compensation to workmen injured while processing timber for the buyer, where in reality the buyer is the person actually directing the economic activity of or utilizing a work-crew for the processing and delivery of timber products for the account of the buyer rather than for sale on the open market. Stevens v. Mitchell, 234 La. 977, 102 So.2d 237; Jones v. Hennessy, 232 La. 786, 95 So.2d 312; Kline v. C. W. Dawson Lumber Co., 230 La. 901, 89 So.2d 385.
In the present instance, had Forest Products made the initial arrangements with the landowner on whose tract Monroe was injured, it is conceded that Forest Products would have been liable in compensation as the employer or principal of Malcolm, who had hired Monroe as one of its three-man crew. A different result should not obtain simply because Malcolm himself rather than Forest Products had contacted the landowner to obtain the timber upon which Monroe was injured: Whether the timber was purchased directly by Forest Products or instead by Malcolm; in either event, while processing such timber into pulpwood, Malcolm and his crew were doing so pursuant to previous direction from Forest Products to produce that type of pulpwood in a given amount that week, and they were doing so in order to produce this pulpwood solely for delivery for the account of Forest Products to fill the purchase-order given Forest *170 Products (not Malcolm) by International Paper.
Professor Wex Malone, noted Louisiana compensation authority, criticized a line of decisions apparently overruled or at least weakened by the cited Supreme Court decisions (but in part reinstated by our decision in Bryant), stating, pertinently to the present question, at Malone, Louisiana Workmen’s Compensation (1951), Section 123 at 1964 pocket part, pp. 47-48:
“In practical effect the intermediary is no more than a contractor who is paid for severing and hauling the timber. Yet, since the title passes through him, the courts have felt compelled to exclude him from the classification of contractor, because he is regarded as a ‘seller.’ Apparently it is assumed that a person cannot be a ‘seller’ and a ‘contractor’ at the same time, although this writer has never understood why both these relationships cannot exist simultaneously. In fact our courts have recognized that one may be the employee of another who has sold him goods when the seller controls the buyer’s conduct in the reselling of the same goods. As a result of the lumbering practice described above, the employees of the intermediary must rely exclusively upon the intermediary for compensation in the event of injury or death, and, as might be suspected, this intermediary is usually insolvent.”
If the legislature desires to exempt timber industries from the workmen’s compensation act which applies to all other hazardous businesses in this state, then no doubt the workingman crippled in the production of timber should be forced to bear the full loss of his own disability or perhaps the general taxpayer should be forced through welfare payments to provide subsistence for him and his family. Since the legislature' has not so provided, however, an •economic unit of the timber industry functioning solely to obtain the production and delivery of pulpwood, such as Forest Products, should bear the cost of work-injuries sustained in the operation of this hazardous business, passing on this cost to the consumer of its products, in accordance with the principle applying as to all other hazardous industries subject to the Louisiana workmen’s compensation act.
As indicated by his dissent in Bryant, the writer feels strongly that compensation protection was legislatively intended to apply in instances such as the present where workmen are actually being utilized through an intermediary to perform work which is part of a principal’s trade, business, or occupation. LSA-R.S. 23:1061; Shird v. Maride, La.App. 3 Cir., 156 So.2d 476. Although the Supreme Court’s denial of cer-tiorari in Bryant may have been motivated by factual considerations rather than by agreement with the legal principle announced in Bryant; nevertheless, the writer, as a member of this court with the responsibility of not obstructing its processing of its docket through stubborn adherence to a minority position, will accede to the majority’s position in Bryant until such time as it is overruled either by a higher court or by ourselves — and for this reason only I concur in the denial of the rehearing instead of dissenting from it.