PRICE, Judge.
On this appeal the primary issue to be resolved is whether the plaintiff, a pulpwood producer, is entitled to the benefits of the Workmen’s Compensation Statute as against a purchaser of wood products, usually referred to as a “dealer”.
Plaintiff, Rogers Crow, filed this action against Sam Jones and Sam Jones, Inc., alleging that he was injured while performing manual labor in processing pulpwood for delivery to the woodyard of International Paper Company in Minden, Louisiana, for the account of the aforenamed defendants. For the purpose of this opinion, we shall refer to the defendants collectively simply as “Jones”.
Plaintiff was injured while performing manual labor in loading his truck on May 15, 1967. He seeks benefits for total and permanent disability, along with medical expenses, penalties and attorney’s fees.
The trial court found that the relationship between plaintiff and Jones was that of a vendor and vendee and rejected the plaintiff’s demands for compensation benefits.
The evidence reflects that Rogers Crow began a business relationship with Jones approximately a year and a half prior to the date of his accident. Jones is a buyer of pulpwood, operating under an arrangement with International Paper Company at its Springhill, Louisiana, mill to furnish a certain quota of pulpwood of a specific size to its woodyard in Minden each week. To procure a supply of pulpwood to fill this quota Jones relies on approximately twenty-five individual truck owners, who sever the standing timber, cut it into the required lengths and haul same to the woodyard, where it is measured and accepted by International. Jones aided plaintiff in financing the purchase price of trucks, equipment and for repairs from time to time. There was a continuing indebtedness by plaintiff to Jones during the entire period that Crow hauled pulpwood under the Jones quota. Crow hauled and delivered pulpwood during this period of time almost exclusively under the Jones quota. The evidence reflects that only in one instance did Crow cut and deliver a quantity of wood to another dealer. Just prior to his accident in May, 1967, the Jones quota was filled, and after discussion with Jones, Crow cut and delivered several loads to a Mr. Lyles from Homer, Louisiana. There is no evidence reflecting that Crow ever negotiated directly with any landowner for purchase of timber that he cut. All timber cut by Crow was negotiated for by Jones and payment was made to the landowner by Jones, either at the time of purchase or on a unit basis after severance and delivery to the woodyard, commonly called “payment for stumpage”. Crow was directed to the particular tract of timber on which he was to cut pulpwood by either Sam Jones personally or by a forester employed by Jones.
Crow was not obligated to cut or haul any minimum amount of timber at any time from any of the tracts provided by Jones. Although he was not obligated to haul the wood on behalf of the Jones quota, it was clear that he was expected to do so as long as he was cutting timber arranged for by Jones. It is evident from reading the evidence that Crow could reasonably believe he was obligated to deliver pulpwood exclusively to Jones. At the time of the accident Crow was being paid by Jones the sum of $13.75 per cord for pine pulpwood hauled for Jones’ account to the International woodyard in Minden. From this amount a deduction was made by Jones for “stump-age” due the landowner, and the sum of $2.00 per cord to apply on the indebtedness owed by Crow for loans advanced to him.
As the pulpwood industry is extensive in the State of Louisiana and is conducted *60 throughout the State in a manner substantially similar to that utilized by the parties in this action, a number of cases have decided the status of a producer or his employee with the dealer or broker.
Prior to the 1948 amendment (LSA-R.S. 23:1021[6]), which brings an independent contractor doing substantial manual labor within the coverage of the compensation statute, this circuit, in the case of Collins v. Smith, 13 So.2d 72 (Ct.App.2d, 1943), extended the provisions of the act to cover the employee of a hauler of pulpwood to a dealer where the facts disclosed that the hauler owned his own equipment, hired his own helpers, and was to be paid on a unit basis for work performed. The court there found the right to control or supervise was sufficient to establish the relationship of employer-employee.
In the later case of Cerie v. Malone, 125 So.2d 254 (Ct.App., 3d Cir., 1960), relied on by the trial judge in reaching his conclusion that Crow was a vendor, the Third Circuit had a factual situation very similar to that involved herein.
It is apparent that the court in the Cerie case, in finding a vendor-vendee relationship, relied heavily on the fact that the producer, or hauler, negotiated for his own timber from the landowner, and had this element not been present, a different conclusion may have been reached. This case was followed by the case of Bryant v. United States Fidelity & Guaranty Co., 163 So.2d 95 (Ct.App., 3d Cir., 1964), decided by the same circuit, wherein the court again refused to find either an employer-employee, or principal-independent contractor relationship under reasonably similar facts to the instant case, the important difference being the court’s finding that a lack of supervision or control existed by the dealer over the producer’s activities, as the producer purchased his own timber from the landowner and the producer was not heavily indebted to the dealer, which would subject him to an economic control.
These two factors, which were found absent by the court in the Bryant case, are present in the case being reviewed. Crow cut only timber negotiated for by Jones and was continuously indebted to defendant. In practical effect, all of the activities of Crow were directed to the fulfillment of Jones’ economic needs for pulpwood to meet his quota with International, and no significant amount of pulpwood was produced for sale on the open market.
An analysis of the appellate cases that have treated this problem over the years prior to the 1948 amendment extending coverage to independent contractors doing manual labor, will reflect that the courts have treated the producer as an employee of the dealer as opposed to an independent contractor to afford coverage under the act where the dealer, or buyer, owned or procured the timber tracts to be cut, directed the producer to the tracts and exercised economic control over the activities of the producer.
After the amendment rendered the distinction between employee or contractor immaterial for the purposes of coverage under the act, the courts have continued to use the same criteria for determination of the producer’s status of either employee or independent contractor as opposed to a vendor-vendee relationship. A very scholarly analysis of the cases on this subject is contained in both the majority and dissenting opinion in the case of Bryant v. United States Fidelity & Guaranty Company, supra. It is apparent to this court that had the Bryant case contained the additional element found in this case (the exclusive negotiation for the timber tract by the dealer and a substantial degree of economic control over the producer), the court would have found coverage under the act.
We are of the opinion that the district court erred in holding that the Cerie case is controlling on the facts contained in this record. We conclude that there was no bona fide buyer-seller relationship between Crow and Jones, and he must necessarily be either an employee or an independent contractor performing substantial manual *61 labor. For the purpose of coverage under the act it is immaterial which of these later categories plaintiff falls within.
There is no dispute in regard to the occurrence of the accidental injury to plaintiff. The evidence pertaining to the extent and duration of plaintiff’s disability and the amount of his average weekly earnings which actually resulted from his own manual labor, as opposed to his gross income from use of his truck and crew, is insufficient in the present record for this court to make an award of benefits under the act.
Equity would best be served by allowing the case to be re-opened for any additional evidence necessary and to allow the trial court to pass on those issues not considered by it as a consequence of its finding that no coverage was afforded plaintiff under the act.
It is therefore ordered that the judgment appealed from be reversed and that the case be remanded to the district court for further proceedings in accordance with the views expressed herein. Costs of this appeal are to be paid by appellee.